IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN C. ETTER, individually and on
behalf of all others similarly situated,

      Plaintiff,

  v.

ALLSTATE INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY,
ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY,
ALLSTATE NORTHBROOK
INDEMNITY COMPANY, ALLSTATE
INSURANCE COMPANY OF
CALIFORNIA, LOUIS ODIASE, and
DOES 1–5,

      Defendants.

No. C 17-00184 WHA

**ORDER RE CLASS
CERTIFICATION**

**INTRODUCTION**

In this putative class action for alleged violations of the TCPA, plaintiff moves to certify

two separate classes. The motion is **GRANTED IN PART** and **DENIED IN PART**. This order

certifies one class, appoints the named plaintiff as class representative, and appoints plaintiff's

counsel of record as class counsel.

**STATEMENT**

This is a putative class action by plaintiff John Etter against Allstate Insurance Company,

Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, Allstate

Northbrook Indemnity Company, and Allstate Insurance Company of California (collectively,

"Allstate"), and Louis Odiase, an Allstate insurance agent. Etter asserts a single claim for violation of the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, based on allegations that defendants sent a single unsolicited facsimile advertisement to Etter on October 11, 2016, without his prior invitation or permission and without the legally-required opt-out notice language. Most of the underlying facts were developed on briefing for the instant motion and are briefly summarized herein.

Odiase works as an independent contractor for Allstate and has sent fax advertisements since 2003 using fax broadcasters — first, 127 High Street, and later WestFax. According to Odiase, he and his employees obtained leads for potential customers from two online sources, Salesgenie and thebluebook.com. They then followed up on the leads by calling potential customers and asking for permission to send advertisements by fax, among other things. Through this process, over the years, they developed a "database" or "target list" of potential customers who had supposedly consented to receive advertisements by fax. This case concerns two specific mass fax broadcasts in two separate years — 2015 and 2016.

On May 25, 2015, Odiase emailed his target list, which contained 28,134 fax numbers, to 127 High Street with instructions to remove duplicates, divide, and send faxes to the list over a period of four weeks (*see* Dkt. No. 59-5). Etter's fax number appeared on line 186 of the target list. Odiase received an invoice for $38.37 from 127 High Street for May 2015 but that invoice contained no information regarding the number of faxes successfully transmitted, or to whom (*see* Dkt. No. 64-12). Nor is that information available elsewhere in the record. Nor does Etter himself have any memory or proof (like a hard copy of the fax) that he actually received the fax.

The second mass broadcast occurred over a year later. On October 11, 2016, WestFax issued an invoice to Odiase for $244.05 for 17,432 faxes. The parties seem to agree that this represents the number of faxes that, at least according to WestFax, were successfully sent, although defendants stress that more detailed records of the 2016 transmission — including fax logs documenting the numbers that actually received the transmission — remain unavailable (*see* Dkt. Nos. 59 at 4, 62 at 6, 64 at 22). In the course of this litigation, Odiase also produced what appears to be an exception report — *i.e.*, a log of failed transmissions — with 16,006 entries for

the 2016 fax (*see* Dkt. No. 62-14).  Etter himself also has a hard copy of the 2016 fax, which he

appended to his complaint (Dkt. No. 1).

Based on the foregoing, Etter seeks to certify two classes pursuant to Federal Rules of

Civil Procedure 23(a) and 23(b)(3):

**Class A:**

All persons or entities successfully sent a facsimile on or about
May 25, 2015, stating, "DO YOU KNOW THAT YOU CAN
**SAVE UP TO 40–60%** ON COMMERCIAL AUTO
INSURANCE?," "To get your <u>free</u> quote, please complete the
form below and fax to:  **(510) 234-0518**," and "You can
unsubscribe at any time.  Please fax your removal request to (877)
256-2022."

**Class B:**

All persons or entities successfully sent a facsimile on or about
October 11, 2016, stating, "potentially save **40–60%** off your
Commercial auto insurance," "fill out the form below" and "FAX
YOUR REQUEST TO:  510-234-0518, TEL 510-234-0516, OR
EMAIL:  A026315@ALLSTATE.COM," and "If you wish to be
removed from our Fax list, please call 888-828-3086."

This motion follows full briefing and oral argument.

**ANALYSIS**

**1.    LEGAL STANDARDS.**

Federal Rule of Civil Procedure 23(a) provides, "One or more members of a class may

sue or be sued as representative parties on behalf of all members only if:  (1) the class is so

numerous that joinder of all members is impracticable; (2) there are questions of law or fact

common to the class; (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class; and (4) the representative parties will fairly and adequately

protect the interests of the class."  Rule 23(b) sets forth three conditions under which, if the

prerequisites of Rule 23(a) are satisfied, a class action may be maintained.  Class certification is

appropriate if a plaintiff meets all the prerequisites of Rule 23(a) and at least one condition of

Rule 23(b).  *Abdullah v. United States Sec. Assocs., Inc.*, 731 F.3d 952, 956–57 (9th Cir. 2013).

**2.    STANDING.**

Both Odiase and Allstate contend Etter lacks standing to assert the claims of, and

therefore cannot represent, members of proposed Class A because he has no proof that he

3

1    actually received the 2015 fax (*see* Dkt. Nos. 62 at 18–20, 64 at 11–12).  He does not have a

2    physical copy of the fax and does not remember actually receiving the fax (*see* Dkt. No. 62-7 at

3    75:16–76:2).  *Indeed, the complaint contains no allegations regarding the 2015 fax.*  Etter

4    stumbled onto the possibility that he might have received the 2015 fax through discovery; his fax

5    number appeared on the target list (not the same as a transmission log) sent by Odiase to 127

6    High Street.  He also claims further unspecified discovery may unearth additional evidence that

7    127 High Street actually transmitted the 2015 fax to him (*see* Dkt. Nos. 59 at 4–5, 67 at 5–6).

8         This is too great a leap at this stage.  In his reply brief, Etter cites various decisions for

9    the proposition that "awareness" of an offending transmission is unnecessary to establish

10   standing because "occupation" of the fax line is a sufficiently concrete injury.  None of the cited

11   decisions, however, support the further proposition that Etter has standing even despite the

12   absence of evidence or allegations in the complaint that defendants successfully transmitted the

13   offending fax to him.  *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th

14   Cir. 2017) (a TCPA plaintiff had standing where the parties did not dispute that the defendants

15   successfully sent the offending text messages); *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627,

16   630, 634 (6th Cir. 2015) (a TCPA plaintiff had standing where fax logs showed two successful

17   transmissions of the offending fax); *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris*, 781 F.3d

18   1245, 1252–53 (11th Cir. 2015) (a TCPA plaintiff had standing where unrefuted record evidence

19   established successful transmission of the offending fax).

20        Etter also cites various authorities for the proposition that class certification motions are

21   not limited to proposed class definitions articulated in the complaint (Dkt. No. 67 at 7).  Again,

22   these arguments miss the point.  The problem is not that Etter proposed class definitions not set

23   forth in the complaint but rather that Etter proposes to bring a class claim for which he has not

24   even alleged, much less established, standing.  Certification is therefore **DENIED** as to proposed

25   Class A.  This order does not further address the parties' arguments about standing in the context

26   of the typicality inquiry (*see* Dkt. Nos. 62 at 18–20, 64 at 12, 67 at 6–8).  *See, e.g.*, *Bates v.*

27   *United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) ("Standing is a threshold matter

28   central to our subject matter jurisdiction.").

4

### 3.    RULE 23(a).

#### A.    Numerosity.

Numerosity is satisfied if "the class is so numerous that joinder of all members is impracticable." F.R.C.P. 23(a)(1). There is no dispute that proposed Class B, which encompasses over ten thousand members, satisfies this requirement.

#### B.    Commonality.

Commonality is satisfied if "there are questions of law or fact common to the class." F.R.C.P. 23(a)(2). The party seeking class certification must show that their claims depend on a common contention "capable of classwide *resolution* — which means that determination of its *truth or falsity* will resolve an issue that is central to the validity of each one of the claims in one stroke." *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1112 (9th Cir. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

There is also no dispute that the commonality requirement is satisfied here. To give just one nonexhaustive example, whether or not the fax in question constituted an "advertisement" within the meaning of the TCPA is a common issue capable of classwide resolution.

#### C.    Typicality.

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." F.R.C.P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[], and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quotations omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

1    This order finds that, at least on this record, Etter's claims are sufficiently co-extensive

2    with those of absent class members to satisfy the typicality requirement for proposed Class B.

3    Much of defendants' arguments to the contrary revolve around the issue of Etter's standing (or

4    lack thereof) with respect to proposed Class A, but that issue has already been resolved above as

5    a threshold matter and need not be rehashed under the caption of Rule 23(a) typicality.

6    Odiase contends Etter's claim is also atypical because, although he is the sole named

7    plaintiff, the fax number he claims to own belongs to a plumbing and heating business that he

8    co-owns with his wife. Odiase claims it remains unclear whether the 2016 fax was addressed to

9    Etter, his wife, or their business, and baldly asserts that "the factual difficulty in ascertaining the

10   recipient of the fax illustrates that Plaintiff's claim is not likely to be typical of the class he seeks

11   to represent" (*see* Dkt. No. 62 at 20–21). This hand-wringing is unnecessary. Odiase has

12   provided no authority or analysis as to why or how the relationship between Etter, his wife, and

13   their company would materially affect the substance of Etter's TCPA claim. Nor does Odiase

14   explain why the mere possibility that some fax numbers at issue might be associated with

15   multiple recipients defeats typicality at this stage.

16                      **D.      Adequate Representation.**

17   A proposed class representative is adequate if they "will fairly and adequately protect the

18   interests of the class." F.R.C.P. 23(a)(4). Our court of appeals has explained that a

19   representative meets this standard if they (1) have no conflicts of interest with other class

20   members and (2) will prosecute the action vigorously on behalf of the class. *Staton v. Boeing*

21   *Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Here, there is no dispute that Etter and his counsel —

22   including experienced TCPA litigators — meet this requirement, and this order so finds.

23           **4.      RULE 23(b).**

24   Etter contends he satisfies the third condition of Rule 23(b), which provides:

25           A class action may be maintained if Rule 23(a) is satisfied and if
             . . . the court finds that the questions of law or fact common to
26           class members predominate over any questions affecting only
             individual members, and that a class action is superior to other
27           available methods for fairly and efficiently adjudicating the
             controversy. The matters pertinent to these findings include:
28

6

(A)  the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)  the likely difficulties in managing a class action.

### A.  Predominance.

Etter contends the predominant common questions in this case include (1) whether the fax in question constitutes an "advertisement" within the meaning of the TCPA, (2) whether defendants constitute "senders," (3) whether defendants can prove an established business relationship or prior express permission defense, and (4) what statutory damages or injunctive relief are appropriate (Dkt. No. 59 at 10).  Both defendants respond that whether each potential class member had an established business relationship with defendants or consented to the fax in question are issues incapable of class-wide resolution because they would require individualized factual determinations (*see* Dkt. Nos. 62 at 14–18, 64 at 13–20).

Both defendants cite the undersigned judge's decision in *Fields v. Mobile Messengers Am., Inc.*, No. C 12–05160, 2013 WL 6073426, at \*3 (N.D. Cal. Nov. 18, 2013), for the proposition that lack of consent is an essential element of a prima facie case under the TCPA and Etter therefore has the burden of proof on this issue (*see* Dkt. Nos. 62 at 14–15, 64 at 13–14). *Fields* placed the burden on the plaintiffs to prove a lack of prior express consent because it interpreted *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012), as a statement by our court of appeals "that consent is an element of a prima facie TCPA claim." 2013 WL 6073426, at \*3.  Just this year, however, our court of appeals clarified that, notwithstanding *Meyer* — which "discussed prior express consent as a consideration relating to a TCPA claim analyzed in the context of a preliminary injunction and whether the plaintiff established that he was likely to succeed on the merits of his claim" — prior express consent "is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Van Patten*, 847 F.3d at 1044 & n.3.  Neither Odiase nor Allstate addressed *Van Patten* in briefing, but that decision, not *Fields* or *Meyer*, controls here.

7

1          Turning to the question of whether the affirmative defense of prior express consent can

2    be adjudicated on a class-wide basis here, this order first stresses that the undersigned judge has

3    been careful to insist on a common method of proof as a requirement of predominance for class

4    certification purposes. *See, e.g.*, *Lou v. Ma Labs., Inc.*, No. C 12–05409, 2014 WL 68605, at *3

5    (N.D. Cal. Jan. 8, 2014); *Lane v. Wells Fargo Bank, N.A.*, No. C 12–04026, 2013 WL 3187410,

6    at *8 (N.D. Cal. June 21, 2013); *Dugan v. Lloyds TSB Bank, PLC*, No. C 12–02549, 2013 WL

7    1703375, at *7–8 (N.D. Cal. Apr. 19, 2013). On the surface, the affirmative defense here seems

8    to present insurmountable issues of individualized proof. Upon closer examination through the

9    practical lens of how the trial will unfold, however, a common method of proof emerges from

10   our facts. Defendants base this affirmative defense, not on any one-by-one inquiry of consent

11   from individual recipients, but on general testimony about the practices and procedures of

12   Odiase's agency plus one example of a customer who submitted a declaration that she had given

13   such consent (*see* Dkt. Nos. 62 at 4–5, 16–17; 64 at 13–18). On this record and after cross-

14   examination of the underlying testimony, a jury could reasonably conclude that defendants have

15   (or have not) provided sufficient evidence of adequate practices or procedures to obtain consent

16   and thereby accept (or reject) the affirmative defense on a class-wide basis.

17          In a similar vein, Allstate contends the affirmative defense of an established business

18   relationship will also require individualized inquiries that will predominate over the common

19   questions in this case. But Allstate's own argument explains how the reach of that affirmative

20   defense can be determined by simply comparing defendants' business records to identify current

21   and former customers among the alleged recipients of the offending fax (Dkt. No. 64 at 18–19).

22   In other words, while the inquiry is about the statuses of individual recipients, it remains

23   susceptible to a common method of proof. Under these circumstances, this order finds that any

24   individual issues raised by this affirmative defense will not predominate over common questions.

25          Etter also argues in his reply brief that defendants can be liable under the TCPA

26   regardless of whether or not they have an established business relationship or consent defense

27   because the fax in question lacked opt-out notice language required by Section 64.1200 of Title

28   47 of the Code of Federal Regulations (*see* Dkt. No. 67 at 8–11). Section 64.1200 codified a rule

8

<br>United States District Court<br>For the Northern District of California

1   issued by the Federal Communications Commission in 2006 that required an opt-out notice even

2   when the fax is solicited, *i.e.*, the sender obtained permission from the recipient to send the fax.

3   The parties dispute whether or not this solicited-fax rule remains valid in light of a recent

4   decision by the D.C. Circuit that it exceeded the FCC's authority. *Bais Yaakov of Spring Valley*

5   *v. F.C.C.*, 852 F.3d 1078, 1083 (D.C. Cir. 2017). Odiase also contends the fax in question

6   complied with the rule even if it applies here (*see* Dkt. No. 62 at 17). For present purposes, it is

7   sufficient that these questions (including the legal question) are common questions capable of

8   class-wide resolution on the merits. This order need not decide these issues on the merits to

9   conclude that common questions will predominate for class certification purposes.

### B. Superiority.

11   Etter contends a class action is a superior method of adjudicating this controversy

12   because it is "the only practical means to hold Defendants accountable" (*see* Dkt. No. 59 at

13   10–11). Defendants respond that manageability concerns weigh against certification here

14   because, given the absence of direct evidence regarding which specific fax numbers actually

15   received the fax in question, Etter has failed to provide an objective method to determine the

16   members of each class (Dkt. Nos. 62 at 8–13, 64 at 20–22). But whether or not defendants

17   successfully sent the fax in question to a putative class member is an objective criterion, and

18   defendants' arguments actually go to the administrative feasibility of identifying individual class

19   members. To this point, Etter's best authority is *Briseno v. ConAgra Foods, Inc.*, wherein our

20   court of appeals recently held that class certification does not require an administratively feasible

21   way to identify members of the class. 844 F.3d 1121, 1133 (9th Cir. 2017).

22   Odiase cites *Briseno* for the general principle that courts consider "the likely difficulties

23   in managing a class action" in evaluating superiority but fails to come to grips with *Briseno*'s

24   holding that Rule 23 does not require an administratively feasible way to identify members of the

25   class, or with Etter's argument that successful transmission of the offending fax *is* an objective

26   method of defining the proposed class even if we cannot reliably identify specific class members

27   (*see* Dkt. No. 62 at 8–14). Allstate makes a similar argument and cites *Sandusky Wellness*

28   *Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992 (8th Cir. 2016), for the proposition that,

9

1    "without fax logs, class members are not 'ascertainable' because there is no objective criteria for

2    identifying class members" (Dkt. No. 64 at 20–21). The cited portion of *Sandusky*, however,

3    merely observed that, while "the subscriber to the fax number may not be the recipient of the fax

4    . . . fax logs showing the numbers that received each fax are objective criteria that make the

5    recipient clearly ascertainable." 821 F.3d at 997–98. In other words, *Sandusky* found that fax

6    logs were *sufficient* to establish ascertainability but, contrary to Allstate, does not further stand

7    for the proposition that fax logs are *necessary* to establish ascertainability.[*]

8         This order further agrees with Etter that, insofar as defendants are the ones responsible

9    for the absence of more detailed fax transmission records, they should not benefit from their poor

10   recordkeeping by dodging a class action on that basis (*see* Dkt. No. 67 at 14–15). Besides, in

11   this case there may well be a reliable method of identifying individual class members even in the

12   absence of detailed fax logs. For example, Etter's forensics expert, Robert Biggerstaff, reviewed

13   both the WestFax invoice indicating 17,432 successful transmissions and the "exception report"

14   identifying 16,006 specific failed transmissions in the WestFax broadcast. He reasoned that the

15   original target list for that broadcast would contain at least 33,438 fax numbers, and thereby

16   deduced that the target list was likely "Odiase 2212," another spreadsheet produced by Odiase in

17   discovery. He then subtracted the fax numbers from the exception report from those in the target

18   list to derive a list of 15,286 unique fax numbers representing the 17,432 successful

19   transmissions documented by the WestFax invoice (*see* Dkt. No. 67-2 ¶¶ 18–23).

20        In its opposition brief, Allstate criticizes Biggerstaff's methodology and claims he failed

21   to consider other important documents in his analysis (Dkt. No. 64 at 23–24). These arguments

22   go to the merits of the case but do not undermine the point for present purposes, *i.e.*, that the

23   absence of fax logs is not necessarily fatal to efforts to identify specific class members. For

24   example, both in briefing and during oral argument, defendants made much of the fact that

25   twelve of the 97 fax numbers that opted out after receiving the 2016 fax (and therefore

26   confirmed that they actually received that fax) did not appear on Odiase 2212. Thus, defendants

27   _____

28   [*] Ironically, *Sandusky* made this observation specifically to reject the argument that a class of all
     persons who "were sent" offending faxes could not be certified "because multiple persons may claim injury for
     each fax" — an argument also raised by defendants here.

10

1    insist, Odiase 2212 could not have been the target list for the 2016 fax. As defendants

2    themselves admit, however, those twelve numbers did not appear on *any* list produced thus far

3    (*see* Dkt. No. 64 at 9, 23). Etter and Biggerstaff's response that logical explanations —

4    including human error and the option to remove multiple numbers through the opt-out process —

5    are readily available for the twelve discrepancies is therefore persuasive. At minimum, a rational

6    jury could easily accept (or reject) Etter's theory that Odiase 2212 was indeed the target list for

7    the 2016 fax, albeit with some inferences to connect the dots.

8         Allstate also objects that Etter untimely filed both Biggerstaff's opening and rebuttal

9    reports with his reply brief instead of his class certification motion (Dkt. No. 69). True, Etter's

10   class certification motion was due and filed on October 27, whereas Biggerstaff's opening report

11   was dated November 7. But Etter claims in his reply brief that Odiase did not produce the

12   exception report and Odiase 2212 — documents relied upon in Biggerstaff's report — until

13   October 27, the same day that Etter's motion was due (Dkt. No. 67 at 1). Allstate does not

14   dispute this. Allstate baldly states in its objection that Etter has not been diligent in his efforts to

15   obtain discovery but provides no factual details in support of that accusation (*see* Dkt. No. 69 at

16   2–3). Moreover, Allstate admits that, despite the time crunch, it was actually able to respond to

17   Biggerstaff's November 7 report in its opposition brief (*id.* at 2; *see also* Dkt. No. 64 at 23).

18   Any prejudice to Allstate is particularly diminished because, as stated, for present purposes

19   Biggerstaff's report indicates only that the absence of fax logs is not necessarily fatal to efforts to

20   identify specific class members. Under these circumstances, this order **DENIES** Allstate's request

21   to strike Biggerstaff's report and references thereto in Etter's reply brief. Since this order does

22   not rely on Biggerstaff's rebuttal report even for the aforementioned limited purpose, Allstate's

23   request to strike that report and references thereto in Etter's reply brief is **DENIED AS MOOT**.

24        In summary, this order **GRANTS** Etter's motion to certify proposed Class B because that

25   class satisfies the requirements of Rule 23(a) and 23(b)(3) but **DENIES** his motion to certify

26   proposed Class A because he lacks standing.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for class certification is **GRANTED IN PART** and **DENIED IN PART**. The following class is **CERTIFIED**:

> All persons or entities successfully sent a facsimile on or about October 11, 2016, stating, "potentially save **40–60%** off your Commercial auto insurance," "fill out the form below" and "FAX YOUR REQUEST TO: 510-234-0518, TEL 510-234-0516, OR EMAIL: A026315@ALLSTATE.COM," and "If you wish to be removed from our Fax list, please call 888-828-3086."

This class definition shall apply for all purposes, including settlement. Plaintiff John Etter is hereby **APPOINTED** as class representative. Plaintiff's counsel from the law firms of Anderson + Wanca and Schubert Jonckheer & Kolbe LLP are hereby **APPOINTED** as class counsel, with Anderson + Wanca as lead counsel.

By **JANUARY 4, 2018, AT NOON**, the parties shall jointly submit a proposal for class notification, with the plan to distribute notice by **JANUARY 25, 2018**. In crafting their joint proposal, counsel shall please keep in mind the undersigned judge's guidelines for notice to class members in the "Notice Regarding Factors to be Evaluated for Any Proposed Class Settlement" (Dkt. No. 25).

**IT IS SO ORDERED.**

Dated: December 26, 2017.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE