SCHUBERT JONCKHEER & KOLBE LLP
ROBERT C. SCHUBERT (62684)
WILLEM F. JONCKHEER (178748)
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 788-4220
Email: rschubert@schubertlawfirm.com
Email: wjonckheer@schubertlawfirm.com
*Class Counsel*

ANDERSON & WANCA
BRIAN J. WANCA *(pro hac vice)*
RYAN M. KELLY *(pro hac vice)*
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
Email: bwanca@andersonwanca.com
Email: rkelley@andersonwanca.com
*Lead Class Counsel*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN C. ETTER, individually and as the representative of a class of similarly-situated persons,<br><br>        Plaintiff,<br><br>    v.<br><br>ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, ALLSTATE NORTH BROOK INDEMNITY COMPANY, ALLSTATE INSURANCE COMPANY OF CALIFORNIA, LOUIS ODIASE and JOHN DOES 1-5,<br><br>        Defendants. | Case No. 17-CV-00184-WHA<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hon. William Alsup<br><br>Motion Hearing Date: May 23, 2018<br>Motion Hearing Time: 2:00 p.m.<br>Courtroom 12 - 19th Floor |

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

## NOTICE OF MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

On May 23, 2018, at 8:00 a.m., in Courtroom 12 – 19th Floor of the Honorable William Alsup, Plaintiff, John C. Etter, will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for the entry of an Order as follows:

1.    Preliminarily approving the Settlement Agreement between Plaintiff, John C. Etter and Defendants, Allstate Insurance Company, Allstate Indemnity company, Allstate Property and Casualty Insurance Company, Allstate Northbrook Indemnity Company, Allstate Insurance Company of California and Louis Odiase;

2.    Approving the form of Notice of Class Action Settlement attached as Exhibit 2 to the Settlement Agreement and its dissemination to the Settlement Class by facsimile and first-class U.S. Mail ; and

3.    Setting a schedule for the final approval process.

This motion is made on the grounds that the proposed settlement is within the necessary range of reasonableness to justify granting the preliminary approval.

This is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Ryan M. Kelly, the pleadings and papers on file in this action, and any oral and documentary evidence that may be presented at the hearing on this motion.


DATED: May 17, 2018

JOHN C. ETTER, individually and on behalf of a class of similarly situated persons

By: s/ Ryan M. Kelly

BRIAN J. WANCA *(pro hac admitted)*
RYAN M. KELLY *(pro hac admitted)*
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
Facsimile:  (847) 368-1501
bwanca@andersonwanca.com
rmkelly@andersonwanca.com
*Lead Class Counsel*

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBERT C. SCHUBERT
WILLEM F. JONCKHEER
SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 788-4220
Facsimile:  (415) 788-0161
rschubert@schubertlawfirm.com
wjonckheer@schubertlawfirm.com
*Class Counsel*

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL.......................................................1

I.    STATEMENT OF ISSUES PRESENTED ........................................................1

II.   INTRODUCTION................................................................................................1

III.  FACTUAL and PROCEDURAL HISTORY ...................................................2

IV.  SUMMARY OF THE SETTLEMENT ............................................................3

V.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE
    CLASS SETTLEMENT ....................................................................................6

    A.  STANDARD FOR PRELIMINARY APPROVAL..................................6

    B.  THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR
       PRELIMINARY APPROVAL ...............................................................8

VI.  THE PROPOSED NOTICE PLAN MEETS THE REQUIREMENTS
    OF RULE 23 ....................................................................................................10

VII.  ATTORNEYS' FEES AND COSTS AND AN AWARD TO PLAINTIFF ...................10

VIII. THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING .....................16

CONCLUSION.................................................................................................................

# TABLE OF AUTHORITIES

**Cases**

*American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.,*
    No. 09-cv-1162 (W.D., Mich. Mar. 1, 2016) ................................................................9, 14

*Avio, Inc. v. Alfoccino, Inc.,*
    No. 10-cv-10085 (E.D. Mich. Jan. 18, 2018) ...................................................................14

*Avio, Inc. v. Creative Office Solutions, Inc.,*
    10-cv-10622 (E.D., Mich. Dec. 10, 2012) ........................................................................14

*Churchill Vill., L.L.C. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004)......................................................................................7, 10

*Class Plaintiffs v. City of Seattle,*
    995 F.2d 1268 (9th Cir. 1992) ...........................................................................................7

*G.M. Sign, Inc. v. Finish Thompson, Inc.,*
    08 C 5953 (N.D. Ill. Nov. 1, 2010) .................................................................................. 14

*G.M. Sign, Inc. v. Finish Thompson, Inc.,*
    No. C 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009)................................................9

*Gribble v. Cool Transports Inc.,*
    No. 06-cv-04863, 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008).......................................8

*Harris v. Vector Mktg. Corp.,*
    No. 08-CV-5198, 2011 WL 1627973 (N.D. Cal. April 29, 2011) .....................................7

*Hawk Valley, Inc. v. Taylor,* Case
    No. 10-cv-804 (E.D. Pa. Aug 6, 2015) ............................................................................14

*Health One Medical Center, Eastpointe P.L.L.C. v. Mohawk, Inc.,*
    2018 WL 2123336 (May 9, 2018, 6th Cir.) .....................................................................12

*Hinman v. M and M Rental Center, Inc.,*
    545 F. Supp. 2d 802 (N.D. Ill. 2008) ................................................................................9

1

2

**<u>TABLE OF AUTHORITIES (Cont'd.)</u>**

3

4

**Cases**

5

*Imhoff Inv., LLC v. Alfoccino, Inc.*,
    792 F.3d 627(6th Cir. 2015) ....................................................................................12, 13

6

7

*Imhoff Investment, LLC v. Sammichaels, Inc.*,
    No. 10-Cv-10996 (E.D. Mich. Nov. 2, 2016) ..................................................................14

8

9

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................................14

10

11

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ..........................................................................................10

12

13

*In re M.L. Stern Overtime Litigation*,
    No. 07-CV-0118, 2009 WL 995864 (S.D. Cal. April 13, 2009) ......................................7

14

15

*In re Oral Sodium Phosphate Solution-Based Prods. Liab. Action*,
    No. MDL 2066, 2010 WL 5058454 (N.D. Ohio Dec. 6, 2010).......................................15

16

17

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283, 341 (3d Cir. 1998).....................................................................................15

18

19

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ...........................................................................................7

20

21

*In re Toys R Us-Delaware, Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litigation*,
    295 F.R.D. 438 (C.D. Cal. 2014).....................................................................................15

22

23

*Jackson's Five Star Catering, Inc. v. Beason*,
    No. 10-cv-10010 (E.D. Mich. Apr. 15, 2015).................................................................14

24

25

*JWD Automotive Inc., v. DJM Advisory Group LLC*,
    218 F. Supp. 3d 1335 (M.D. Fla. Nov. 21, 2016) .............................................................9

26

27

28

## TABLES OF AUTHORITIES (cont'd)

**Cases**

*Meyer v. Capital All. Grp.,*
      No. 15-cv-2405-WVG, 2017 WL 5138316 (S.D. Cal. Nov. 6, 2017) ..............................13

*Paldo Sign & Display Co. v. Wagener Equities, Inc.,*
      825 F.3d 793 (7th Cir. 2016) ...........................................................................12

*Saf-T-Gard International, Inc. v. Seiko Corp. of America,*
      No. 09 C 0776 (N.D. Ill. Jan, 14, 2011)..........................................................14

*Sandusky Wellness Center, LLC v. Heel, Inc.,*
      12-cv-1470 (N.D. Ohio Apr. 25, 2014) ............................................................14

*Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.,*
      No. 12-cv-2257 (N.D. Ohio Feb. 9, 2016).........................................................14

*Sawyer v. Atlas Heating and Sheet Metal Works, Inc.,*
      No. 10-cv-331 (E.D. Wis. July 19, 2013) ........................................................14

*Stanley v. U.S. Steel Co.,*
      No. 04-74654, 2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) ..........................14

*Siding and Insulation Co., Inc.,v. Beachwood Hair Clinic, Inc.,*
      279 F.R.D. 442 (N.D. Ohio Jan. 30, 2012) ........................................................9

*State Farm General Ins. Co. v. JT's Frames, Inc.,*
      2010 WL 29799 (Cal. App. Jan. 27, 2010).......................................................11

*Staton v. Boeing Co.,*
      327 F.3d (9th Cir. 2002) ...................................................................................8

*Targin Sign Systems, Inc., v. Preferred Chiropractic Center, Ltd.,*
      679 F. Supp. 2d 894 (N.D. Ill. Jan. 21, 2010) ...................................................9

*The Savanna Group, Inc. v. Trynex, Inc.,*
      10-cv-7995 (N.D. Ill. Mar. 4, 2014) ...............................................................14

*Torrisi v. Tucson Elec. Power Co.,*
      8 F.3d 1370 (9th Cir. 1993) ..............................................................................8

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

## TABLES OF AUTHORITIES (cont'd)

**Cases**

*Vandervort v. Balboa Capital Corp.*,
    8 F.Supp.3d 1200 (C.D. Dist. Cal. 2014 ............................................................10, 11, 14

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...............................................................................11


**Other Authorities**

3 Herbert Newberg & Alba Conte, *Newberg on Class Actions*,
    § 14.03 AT 14-5 (3D ED. 1992) ...........................................................................15

4 Alba Conte and Herbert Newberg, *Newberg on Class Actions,*
    § 11.25 (4th ed. 2002)............................................................................................7

Manual for Complex Litigation (Fourth) § 14.121 (2004) ............................................14

Manual for Complex Litigation (Fourth) § 21.632-34 (2012).........................................6


**Rules**

47 C.F.R. § 64.1200(f)(10) ........................................................................... *passim*
Fed. R. Civ. P. 23(h) ....................................................................................10
Fed. R. Civ. P. 23..........................................................................................10
Fed. R. Civ. P. 23 (c)(2)(B) .........................................................................10
Fed. R. Civ. P. 23(b)(3)................................................................................10
Fed. R. Civ. P. 23(e) ......................................................................................6
Fed. R. Civ. P. 23(e)(1) ............................................................................1,10

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

### I.    STATEMENT OF ISSUES PRESENTED

1.    Is the proposed Settlement Agreement fair, adequate, and reasonable?

2.    Does the proposed notice plan satisfy the requirements of Federal Rule of Civil Procedure 23(e)(1) and due process?

### II.    INTRODUCTION

This class action is brought by Plaintiff John C. Etter ("Plaintiff") against Defendants, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, Allstate Northbrook Indemnity Company, Allstate Insurance Company of California (collectively, "Allstate") and Louis Odiase ("Odiase," and collectively with Allstate, "Defendants") alleging violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227(b)(1)(C) ("TCPA").   On December 26, 2017, this Court certified a class of "All persons or entities successfully sent a facsimile on or about October 11, 2016, stating, "potentially save **40-60%** of your Commercial auto insurance," "fill out the form below" and "FAX YOUR REQUEST TO 510-234-0518, TEL 510-234-0516, OR EMAIL A026315@ALLSTATE.COM" and "if you wish to be removed from our Fax list, please call 888-828-3086" (the "Class").   Rather than continue to litigate this case through trial, and face the uncertainties that invariably follow, Plaintiff and Defendants (collectively, the "Parties") reached a settlement after two arms-length settlement negotiations with the assistance of U.S. District Court Magistrate Judge Jacqueline Scott Corley.   As a result of the settlement negotiations, the Parties have resolved the claims arising from the alleged violations of the TCPA by Defendants regarding fax advertisements sent on or about October 11, 2016, subject to the Court's approval.

Pursuant to the Settlement Agreement, Defendants have agreed to pay $6,533,250.00 on a non-reversionary basis to create a Settlement Fund to be administered by the Settlement Administrator, which will be used to pay class members, the costs of settlement administration, attorneys' fees and reasonable litigation expenses, and an incentive award to Plaintiff, as approved by the Court (the "Settlement").  The Settlement is of the claims asserted by the Certified Class.

When weighed against the risks, costs, delay, and uncertainties of continuing the litigation, the Settlement constitutes an excellent result that is fair, adequate, and reasonable, and comports with all of the criteria for preliminary approval.  Furthermore, the notice plan contemplated by the Settlement Agreement, as more fully detailed herein, complies with the applicable law and is the best notice practicable for this case.  Accordingly, Plaintiff requests that the Court grant preliminary approval of the proposed Settlement, direct distribution of notice to the Class, and set a schedule for final approval of the Settlement.

**III.    Factual and Procedural history**

This action was filed on January 13, 2017. (Dkt. 1; Declaration of Ryan M. Kelly ("Kelly Decl."), ¶ 2).  Plaintiff's Complaint alleges that Defendants sent unsolicited faxes to Plaintiff and others in violation of the TCPA.  The action seeks statutory damages and injunctive relief.

On March 14, 2017, the Allstate Defendants filed their Answer and Affirmative Defenses (Dkt. 26; Kelly Dec. ¶ 3).  On April 24, 2017, Odiase filed his Answer and Affirmative Defenses (Dkt. 48, Kelly Dec. ¶ 4).  The Parties exchanged Rule 26 initial disclosures and engaged in extensive pre-certification discovery.  An invoice produced by third party fax broadcaster WestFax confirms that 17,432 unsolicited facsimiles were successfully sent to the class on or about October 11, 2016.  (Kelly Dec. ¶ 5). The fax was physically transmitted by WestFax.  Odiase uploaded the fax image and target list using the WestFax portal, directed WestFax to transmit it, and paid the

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

invoice for the transmissions. Odiase did these things in order to sell Allstate insurance products, the premiums for which are collected by Allstate. (Kelly Dec. ¶ 6).

The Court granted, in part, Plaintiff's Motion for Class Certification on December 26, 2018 and appointed Plaintiff's Counsel as Class Counsel. (Doc. 73, Kelly Dec. ¶ 5).   On January 4, 2018, the Parties submitted a Joint Proposed Notice of Pending Class Action and Distribution Plan. (Doc. 76.)   The Court amended the notice and method of distribution in its order Re Proposed Notice of Pending Class Action on February 12, 2018 (Doc. 82), and subsequently extended the deadline for distribution of notice from February 23, 2018 to March 16, 2018. (Doc. 92.)   The Notice of Pending Class Action was distributed by first class U.S. mail and facsimile on or about March 16, 2018 and notified Class members that they had until April 24, 2018 to request exclusion.   Thus, Class members had a period of approximately 40 days in which to opt out, slightly less than the 60 days initially anticipated.   (See Doc. Nos. 74, 89.)   A total of ten (10) Class members, who received a total of 10 facsimiles, timely excluded themselves from the Class.   No opt out requests have been received after April 24, 2018.

On February 6, 2018, the Parties attended a Settlement Conference with Magistrate Judge Corley which did not result in settlement.   After additional written and oral discovery, and the filing of cross motions for summary judgment, the Parties attended a second Settlement Conference with Magistrate Judge Corley on April 20, 2018, at which time the Parties agreed to the terms for a class-wide settlement in this matter. (Kelly Dec. ¶ 7).   The parties subsequently negotiated a formal, written settlement agreement (the "Settlement Agreement"), proposed preliminary approval order, and proposed notice to the class members. (Kelly Dec. ¶¶ 8, 9, 10).

**IV.      Summary of the Settlement.**

If approved by the Court after notice to the Class, the Settlement Agreement would resolve this action and the controversy about fax advertisements sent on or about October 11, 2016. The

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**

Parties negotiated the Settlement after reviewing and analyzing the legal and factual issues presented by this action, the risks and expenses involved in pursuing the lawsuit to conclusion, and the likelihood, costs, and possible outcomes of one or more procedural and substantive appeals. Based upon their review and analysis, the Parties agreed to and executed the Settlement Agreement.

The key terms of the Agreement are as follows:

a. <u>The Class</u>. The Class is the Class certified by the Court in its certification order of December 26, 2017: "All persons or entities successfully sent a facsimile on or about October 11, 2016, stating, "potentially save **40-60%** off your Commercial auto insurance," "fill out the form below" and "FAX YOUR REQUEST TO: 510-234-0518, TEL 510-234-0516, OR EMAIL: <u>A026315@ALLSTATE.COM</u>," and "If you wish to be removed from our Fax list, please call 888-828-3086." Excluded from the Class are (a) Defendants and their present and former officers, directors, shareholders, employees, and their successors, heirs, assigns, and legal representatives; and (b) the Court and its officers. (Also excluded are those 10 persons or entities who timely and validly excluded themselves from the Class, as listed in the Settlement Agreement.)

b. <u>The Class Representative and Class Counsel</u>. The Court previously appointed Plaintiff as the Class Representative and Plaintiff's counsel from the law firms of Anderson + Wanca and Schubert Jonckheer & Kolbe LLP as class counsel, with Anderson + Wanca as lead counsel.

c. <u>Monetary Relief to the Members of the Settlement Class</u>. Defendants have agreed to pay $6,533,250.00 to create a non-reversionary settlement fund to be administered by the Settlement Administrator (the "Settlement Fund") which will be used to pay class members, the costs of settlement administration, Plaintiff's counsel's attorneys' fees and reasonable litigation expenses, and an incentive award to Plaintiff, as approved by the Court.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

If any Settlement check is not cashed, the Parties agree that unclaimed funds from uncashed checks issued to Claimants shall be redistributed to the other class members, or if not feasible, paid as a *cy pres* award to charities mutually agreed by the parties and approved by the Court. Plaintiff requests that any *cy pres* award be made to National Consumer Law Center, www.nclc.com and Defendants propose the Consumer Federation of America, which have lobbied Congress and the FCC on a number of issues involving the TCPA. The Court can choose whatever entity(s) should receive *cy pres* if available.

        d.    <u>Class Notice</u>. The Parties have agreed to notify the Settlement Class about the settlement by sending the notice by facsimile and U.S. mail. The notice advises the class members that they will receive a check for their pro rata share of the Settlement Fund and includes instructions on how to object, should a class member desire to do so. There is no claim form necessary.

        e.    <u>Settlement Administrator</u>. Plaintiff requests that Class-settlement.com be appointed to serve as the third-party settlement administrator who will issue the Settlement Notice, maintain the settlement website, and issue checks and withhold income taxes or collect W-9 information if needed. The anticipated administrative costs are $52,940.00, (Kelly Dec. ¶ 12), which will be paid from the Settlement Fund. Those costs are reasonable compared to the size of the Settlement Fund and in light of the costs for fax and first class mail notice to 15,286 class members, plus first class mailing of the settlement checks. The costs are to come out of the Settlement Fund. If the settlement is not approved, the costs of settlement administration will be divided equally among the parties.

        f.    <u>Release</u>. The claims being released are the same claims asserted in the Complaint and limited to the October 11, 2016 fax. In consideration of the relief provided by the Settlement, the Settlement Class will release all claims that were brought or could have

been brought, as defined in the Settlement Agreement, in this action against Defendants and the other Released Parties (as defined in the parties' Settlement Agreement) about the faxes sent on or about October 11, 2016.

Plaintiff sought injunctive relief in his Complaint but injunctive relief is not part of this Settlement.

g.     <u>Attorneys' Fees and Costs and Class Representative Award</u>. At the final approval hearing, after the Class is notified about the same, Class Counsel will apply to the Court and request approval of award of attorney's fees equal to 30% of the Settlement Fund, plus their reasonable out-of-pocket expenses. Class Counsel will also ask the Court to approve an award of $7,500.00 to Plaintiff John C. Etter, for serving as the class representative.  This request is reasonable given the amount of work Plaintiff has done in this case, including answering 10 sets of written discovery, traveling 2 hours each way to attend his deposition, and making 2 other employees available to be deposed. The amount is consistent with the other awards in TCPA cases and amounts to less than $0.50 per class member who benefit from his efforts on behalf of the class.

**V.     The Court should grant preliminary approval to the Class Settlement.**

**A.     Standard for Preliminary Approval**

Class action settlements must be approved by the Court.  *See*, Fed. R. Civ. P. 23(e).  Court approval occurs in three steps: (1) a preliminary approval hearing, at which the Court considers whether the proposed settlement is within the range of reasonableness meriting final approval; (2) a notice and comment stage, during which class members are informed about the proposed settlement and given an opportunity to object or exclude themselves from the settlement; and (3) a "formal fairness hearing" or final approval hearing, at which the court decides whether the proposed settlement should be approved as fair, adequate, and reasonable to the class.  *See*, Manual for

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

Complex Litigation (Fourth) §§ 21.632-34 (2012).  Underlying this process is a well-settled judicial policy that favors settlements, especially where complex class litigation is concerned.  *Class Plaintiffs v. City of Seattle*, 995 F.2d 1268, 1276 (9th Cir. 1992); *see also, Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

During the preliminary approval stage, the court determines only whether the settlement falls "within the range of possible approval, such that there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing."  *See*, *In re M.L. Stern Overtime Litigation*, No. 07-CV-0118, 2009 WL 995864, at *3 (S.D. Cal. April 13, 2009).  In other words, the Court makes only a preliminary determination of the settlement's fairness, reasonableness, and adequacy, granting preliminary approval unless the settlement terms are so unacceptable that a formal fairness hearing would be a waste of time.  *See*, Manual for Complex Litigation, § 21.632; 4 Alba Conte and Herbert Newberg, Newberg on Class Actions § 11.25 (4th ed. 2002).

In assessing preliminary approval, courts consider whether a settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within a range of possible approval.  *See, Harris v. Vector Mktg. Corp.*, No. 08-CV-5198, 2011 WL 1627973, at *7 (N.D. Cal. April 29, 2011).  While making this assessment, courts must balance a number of factors, including: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement."

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

1    *Staton v. Boeing Co.,* 327 F.3d 938, 959 (9th Cir. 2002); *See also Torrisi v. Tucson Elec. Power Co.,*

2    8 F.3d 1370, 1375 (9th Cir. 1993).

### B.    The Proposed Settlement Meets the Standard for Preliminary Approval

At the outset, it is important to note that the Settlement was negotiated at arm's length by

counsel well versed in class litigation, particularly with respect to TCPA cases, under the auspices of

Magistrate Judge Scott Corley.  The Settlement is therefore entitled preliminarily to "a presumption

of fairness."  *Gribble v. Cool Transports Inc.*, No. 06-cv-04863, 2008 WL 5281665, at *9 (C.D. Cal.

Dec. 15, 2008).  As to the factors the Court may examine, the Settlement, by any measure, is clearly

fair, reasonable and adequate.

First, while Plaintiff was poised to take the case through trial, there existed unique issues in

the case regarding the facsimiles at issue which could invite protracted litigation, extensive motions,

hearings and inevitable appeals.  At best, this would significantly delay the ultimate recovery for the

class.  This Settlement avoids these issues and enables the class to obtain immediate, certain, and

substantial monetary and non-monetary benefits.

Second, the amount offered in the settlement demonstrates that this Settlement is an excellent

result for both the Class and Defendants, considering their risks. The TCPA gives private citizens a

right to sue to (i) enjoin future transmissions, (ii) recover the greater of actual monetary damages or

$500.00 in damages for each junk fax, or (iii) obtain an injunction plus damages. If a court finds that

the sender willfully or knowingly violated the TCPA, it may treble the amount of damages. Here,

Plaintiff recovered a Settlement Fund based on a gross recovery of $375.00 per fax. Each class

member will receive their pro rata share of the Settlement Fund, net of attorneys' fees and expenses,

an incentive award to Plaintiff, and settlement administration costs.

This is an excellent result given that the potential recovery per class member if Plaintiff was

successful was $500.00 per fax, unless the Court found Defendants' conduct to be willful, knowing

or intentional, which would be very difficult to establish in this case.  Here every class member who has not opted out will receive a check from the Settlement Administrator, and there are no claim forms. Plaintiff submits this is the best method to allocate the Settlement Fund among the class members who have not previously opted out (10 opt-outs with 10 total faxes).

Third, this case is at a stage that allowed the Parties to value it fairly.  The Parties engaged in extensive written and oral discovery. Plaintiff answered 10 sets of written discovery, reviewed 4,344 pages of documents produced by Defendants, reviewed 15,395 recorded telephone calls, reviewed and analyzed eight (8) electronic databases, and issued three (3) out of district records subpoenas. Fifteen (15) depositions were taken in this case. In addition, the Class has already been certified and the Parties briefed cross motions for summary judgment and began preparing trial materials before this settlement was reached during the second mediation.

Finally, Class counsel are skilled class action lawyers with extensive TCPA experience. They have been appointed class counsel in many such cases, as well as in other types of class actions. *See, e.g., G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. C 5953, 2009 WL 2581324, *6 (N.D. Ill. Aug. 20, 2009) (Kendall, J.); *Targin Sign System, Inc., v. Preferred Chiropractic Center, Ltd.,* 679 F. Supp. 2d. 894 (N.D. Ill. Jan. 21, 2010) (Hibbler, J.);  *Siding and Insulation Co., Inc., v. Beachwood Hair Clinic, Inc.,* 279 F.R.D. 442 (N.D. Ohio Jan. 30, 2012);  *JWD Automotive Inc., v. DJM Advisory Group LLC.,* 218F. Sup. 3d. 13335 (M.D. Fla. Nov. 21, 2016 ); *American Copper & Brass, Inc., v. Lake City Indus. Prods., Inc.,* No. 09-cv-1162 (W.D., Mich. Mar. 1, 2013); *Hinman v. M and M Rental Center, Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008) (Bucklo, J.), *appeal denied* (08-8012) (7th Cir. Jun 13, 2008).

Given the favorable terms of the proposed Settlement and the rigorous manner in which the terms were negotiated, the proposed Settlement is a fair, reasonable, and adequate compromise of the issues in dispute and merits preliminary approval.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

## VI.    The Proposed Notice Plan Meets the Requirements of Rule 23

Rule 23 (c)(2)(B) requires that, upon certifying a Rule 23(b)(3) class, the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  In addition, Rule 23(e)(1) requires that before a proposed settlement may be approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill.,* 361 F.3d at 575 (internal citations omitted).

Here, a Notice of Pending Class Action has previously been sent to the certified Class via facsimile and U.S. mail and Class Members were given the opportunity to opt-out. The Parties have agreed that the Notice of Class Action Settlement will be sent in the same manner (fax and U.S. mail) to the class members who have not previously opted out.  This is, after all, a case based on the receipt of faxes, and Class members are best identifiable and reachable by their fax numbers.  There is no claim form necessary as Class Members will be mailed a check for their pro rata share of the Settlement Fund upon final approval by this Court.

## VII.    Attorneys' Fees and Costs and an Award to Plaintiff

At final approval, Class Counsel will request that the Court approve Plaintiff's request for attorneys' fees equal to 30% of the Settlement Fund, or $1,959,975.00, plus reasonable expenses, as well as payment of settlement-administration costs to the Settlement Administrator.  Rule 23 permits a court to award "reasonable attorney's fees . . . that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h); *see Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1209 (C.D. Cal. 2014).  "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 941 (9th Cir. 2011).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

The benchmark for a fee award in a common-fund case is 25% of the recovery. *Vandervort*, 8 F. Supp. 3d at 1209.  In "megafund" cases, fees will commonly be under the benchmark, while smaller cases – particularly where the common fund is under $10 million – awards more frequently exceed the benchmark. *Id.* (awarding 33% attorney fee in $3.3 million TCPA settlement).  The Ninth Circuit has identified several factors the Court may consider in assessing whether an award is reasonable and whether a departure from the benchmark is warranted, including: (1) the result achieved; (2) the risk of litigation; (3) the skill required and the quality of work; and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002). These factors all weigh in favor of Class Counsels' 30% fee request.

First, the result achieved is excellent, in light of the potential recovery and the strength of Allstate's defenses to liability. The maximum recovery for the 17,432 transmissions at issue in the certified Class, at the automatic statutory $500 per violation, would equal $8,716,000. The Settlement provides for a non-reversionary Settlement Fund of $6,533,250, which is 75% of the reasonable potential recovery, a truly remarkable result.

Second, Class Counsel took substantial risk in this case. There was little prospect for insurance coverage because California courts have held that comprehensive general liability insurance coverage is not available in TCPA cases. *See State Farm Gen. Ins. Co. v. JT's Frames, Inc.*, 181 Cal. App. 4th 429, 2010 WL 29799 (Cal. App. Jan. 27, 2010).  In addition, Plaintiff suspected Odiase did not have the financial ability to pay for a class settlement, and Odiase's status as an independent contractor would result in Allstate disputing any claim for vicarious liability.

There was also a substantial risk that Allstate would prevail against the Class in its Motion for Summary Judgment. (Doc. 119). Allstate argued that it could not be held liable as the "sender" of the faxes under the FCC regulation defining that term, 47 C.F.R. § 64.1200(f)(10), for the following reasons:

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

(1)     that the faxes were not sent "on behalf of" Allstate, where Odiase failed to obtain Allstate's prior approval for the faxes as required by the Allstate policies he agreed to, and where those policies specifically prohibited agents from sending fax advertisements without the recipients' prior express invitation or permission;

(2)     that the faxes do not advertise Allstate's "goods or services," where the faxes do not state that the insurance policies offered are "Allstate" policies, and the only mention of the word "Allstate" on the faxes is in Odiase's email address; and

(3)     that, even if the faxes do advertise Allstate's "goods or services," Allstate could not be held liable as a "sender" solely on that basis, despite the plain language of § 64.1200(f)(10).

The third point presented the greatest risk. The Ninth Circuit has not decided the issue of "sender" liability, but Allstate's strongest case on point was the Seventh Circuit's decision in *Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 825 F.3d 793, 797 (7th Cir. 2016), which held that, despite the plain language of § 64.1200(f)(10), a defendant cannot be liable merely because its "goods or services" are advertised, and the defendant "must have done something to advertise goods or services." Class Counsels' strongest case at summary judgment was the Sixth Circuit's decision in *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 636–37 (6th Cir. 2015), which held the plain language of § 64.1200(f)(10) states that a defendant whose "goods or services are advertised" is liable.

Notably, however, after the Settlement was reached, on May 9, 2018, the Sixth Circuit decided *Health One Med. Ctr., Eastpointe PLLC v. Mohawk, Inc.*, --- F.3d --- , 2018 WL 2123336, at *2 (6th Cir. May 9, 2018), which held that *Imhoff* applies only where "the defendant in fact hired a fax broadcaster to send out the junk faxes," and that § 64.1200(f)(10) does not allow "an innocent party" to "be held liable for having 'sent' the faxes." The *Health One* court held that the defendant drug companies, who did not contract with the fax broadcaster and were unaware of the fax

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

transmissions, were not liable and were not "senders" under the TCPA, even though the faxes advertised their products. *Id.* If Class Counsel had not reached the Settlement on April 20, 2018, its strongest case for "sender" liability, *Imhoff*, would have been undermined.

Furthermore, there was an additional risk that the Court would accept Allstate's argument that Ninth Circuit TCPA cases would have required Plaintiff to "prove there is an agency relationship" between Allstate and Odiase with respect to the fax advertising at issue. (Doc. 119, Allstate Mot. Summ. J. at 13 (quoting *Meyer v. Capital All. Grp.*, No. 15-CV-2405-WVG, 2017 WL 5138316, at *10 (S.D. Cal. Nov. 6, 2017)). The Class faced significant risk that it would be unable to prove that Allstate is "vicariously liable" for the faxes under traditional agency-law standards.

Plaintiff believes this is the first class settlement where the Defendant did not order and did not know the fax advertisement was being sent.  The Allstate Defendants are paying in excess of $5.5 million to settle the actions of an independent contractor in violation of written company guidelines.

Third, the "skill required and the quality of work" weigh in favor of Class Counsels' fee request. Class Counsel engaged in extensive written discovery and answers to ten (10) sets of written discovery, participated in 15 depositions, prevailed on Plaintiff's motion for class certification, engaged in two settlement conferences, briefed cross-motions for summary judgment, engaged in preparing trial preparation materials per the Court's order, and advanced all costs and expenses including costs associated with providing a notice of pendency to the 15,286 class members. Class Counsel resolved this case through unique capabilities from their years of experience in this type of case.  Plaintiff's counsel was able to persuade Defendant Odiase's errors and omissions insurance carrier to contribute its full policy limits to the settlement.

Fourth, the contingent nature of the fee and the financial burden carried by Class Counsel weigh in favor of a 30% fee. Class Counsel took this case on a contingent basis, assuming a

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

significant risk of nonpayment, not only for their time but also for their out-of-pocket costs. Under similar circumstances, Courts have been willing to exceed the 25% benchmark.  *See Vandervort*, 8 F. Supp. 3d at 1209 (granting 33% award of fees and costs in a TCPA settlement).  Plaintiff's counsel has received in excess of 30% of the settlement funds plus expenses from many other courts, and a 30% fee is well within the market rate for TCPA cases.  *See Avio, Inc. v. Alfoccino, Inc.*, No. 10-cv-10085 (E.D. Mich. Jan. 18, 2018) (Doc. 180) (awarding one third of fund); *Avio, Inc. v. Creative Office Solutions, Inc.*, No. 10-cv-10622 (E.D., Mich. Dec. 10, 2012) (Doc. 31) (same); *Imhoff Investment, LLC v. Sammichaels, Inc.*, No. 10-cv-10996 (E.D. Mich. Nov. 2, 2016) (Doc. 120) (same); *Jackson's Five Star Catering, Inc. v. Beason*, No. 10-cv-10010 (E.D. Mich. Apr. 15, 2015) (Doc. 90) (same); *American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, No. 09-cv-1162 (W.D., Mich. Mar. 1, 2016) (Doc. 278) (same); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, No. 12-cv-2257 (N.D. Ohio Feb. 9, 2016) (Doc. 73) (same); *Hawk Valley, Inc. v. Taylor*, No. 10-cv-804 (E.D. Pa. Aug 6, 2015) (Doc. 193) (same); *Sandusky Wellness Center, LLC v. Heel, Inc.*, No. 12-cv-1470 (N.D. Ohio Apr. 25, 2014) (Doc. 95) (same); *Savanna Group, Inc. v. Trynex, Inc.*, No. 10-cv-7995 (N.D. Ill. Mar. 4, 2014) (Doc. 243) (same); *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, No. 10-cv-331 (E.D. Wis. July 19, 2013) (Doc. 59) (35% of fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 08 C 5953 (N.D. Ill. Nov. 1, 2010) (Doc. 146) (same); *Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09 C 0776 (N.D. Ill. Jan, 14, 2011) (Doc. 100) (same).

"Use of the percentage method also decreases the burden imposed on the Court by eliminating a full-blown, detailed and time consuming lodestar analysis while assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement." *Stanley v. U.S. Steel Co.*, No. 04-74654, 2009 WL 4646647, at *1 (E.D. Mich. Dec. 8, 2009) (citing *In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989); MANUAL FOR COMPLEX LITIGATION, FOURTH § 14.121 (2004)). Even where courts examine class counsel's "lodestar,"

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

courts frequently award multipliers between one and four, with an average near the top of that range. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) (quoting 3 Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS, § 14.03 at 14-5 (3d Ed. 1992)); *In re Oral Sodium Phosphate Solution-Based Prods. Liab. Action,* No. MDL 2066, 2010 WL 5058454, at *4 n.28 (N.D. Ohio Dec. 6, 2010) (court examined 1,120 class settlements nationwide and found "the courts' effective multipliers averaged . . . 3.89 across all 1,120 cases").

To date, Class Counsel Anderson + Wanca has invested 1,135.5 hours and $731,500.00 in attorneys' fees in pursuit of the claims and $141,276.68 in litigation expenses. (Kelly Dec. ¶ 13). Class Counsel Schubert Jonckheer & Kolbe LLP has invested 81.8 hours and $64,060.00 in attorneys' fees, and $1,369.17 in litigation expenses. (Kelly Dec. ¶ 13). The requested fee represents a multiplier of approximately 2.46, which is less than the average identified eight years ago in *In re Oral Sodium Phosphate*. This multiplier is amply justified by the extraordinary result Class Counsel achieved for the Class.

Finally, Class Counsel will also request that the Court approve payment to Plaintiff in the amount of $7,500.00 from the Settlement Fund for serving as the class representative.  It is well-established that the Court may grant a modest incentive award to class representatives, both as an inducement to participate in the suit and as compensation for time spent in litigation, including depositions.  *In re Toys R Us-Delaware, Inc. – Fair & Accurate Credit Transactions Act (FACTA) Litigation*, 295 F.R.D. 438, 470 (C.D. Cal. 2014).

Here, Plaintiff was a catalyst for the Settlement Class's recovery.  Plaintiff filed and pursued the action.  Plaintiff responded to ten (10) sets of written discovery and traveled to San Francisco from Sand City, California for his deposition.  Two of his employees were also deposed, and he had a representative attend the first settlement conference.  Plaintiff has also interacted with his counsel and his telephone carrier concerning thousands of recorded telephone calls being produced.  He has

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

been a very responsive plaintiff and has invested as much time as any plaintiff that Plaintiff's counsel have had in any TCPA case. Plaintiff's efforts greatly benefited the Settlement Class, and, as a result, he entitled it to an incentive award. The award sought amounts to less than $0.50 from each of the 15,276 class members. Plaintiff's counsel will provide more information as part of its request for an incentive award, attorney's fees and expenses filed before final approval.

**VIII.   The Court should schedule a final fairness hearing.**

Plaintiff requests that the Court schedule a hearing to determine whether the settlement should be finally approved. A proposed Final Approval of Agreement and Judgment Order will be included with Plaintiff's brief in support of final approval.

**IX.   Conclusion.**

WHEREFORE, Plaintiff respectfully requests that the Court enter a Preliminary Approval Order in the form attached as Exhibit 1 to the Agreement, granting preliminary approval of the proposed settlement, directing that the members of the Settlement Class be notified about the proposed settlement in the form and manner agreed by the parties (Exhibit 2 to the Agreement), and setting dates for objections and a final approval hearing. The final approval hearing should be on a date no sooner than 90 days after notice to government officials as required by CAFA.

DATED: May 17, 2018
JOHN C. ETTER, individually and on behalf of a class of similarly situated persons,

By: s/ Ryan M. Kelly

BRIAN J. WANCA *(pro hac admitted)*
RYAN M. KELLY *(pro hac admitted)*
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847-368-1500
Fax: 847-368-1501
bwanca@andersonwanca.com
rmkelly@andersonwanca.com
*Lead Class Counsel*

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBERT C. SCHUBERT
WILLEM F. JONCKHEER
SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 788-4220
Facsimile:  (415) 788-0161
rschubert@schubertlawfirm.com
wjonckheer@schubertlawfirm.com
*Class Counsel*

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL