IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN C. ETTER, individually and on behalf of all others similarly situated

    Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, *et al.*,

    Defendant.

No. C 17-00184 WHA

**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

## INTRODUCTION

In this TCPA class action, plaintiff moves for preliminary approval of a proposed settlement agreement. The motion is **GRANTED**.

## STATEMENT

The background of this action is set forth in prior orders (*see, e.g.*, Dkt. No. 73). In short, this is a class action by plaintiff John Etter against defendants Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, Allstate Northbrook Indemnity Company, Allstate Insurance Company of California (collectively, "Allstate"), and Louis Odiase, an Allstate insurance agent. Etter asserted a single claim for violation of the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, based on allegations that defendants sent a single unsolicited facsimile advertisement to Etter on October 11, 2016, without his prior invitation or permission and without the legally-required opt-out notice language. Odiase works as an independent contractor for Allstate and sent fax advertisements using fax broadcasters.

On December 26, 2017, the Court certified the following class relating to the October 11, 2016 fax (Dkt. No. 73):

**Class B:**

> All persons or entities successfully sent a facsimile on or about October 11, 2016, stating, "potentially save **40–60%** off your Commercial auto insurance," "fill out the form below" and "FAX YOUR REQUEST TO: 510-234-0518, TEL 510-234-0516, OR EMAIL: A026315@ALLSTATE.COM," and "If you wish to be removed from our Fax list, please call 888-828-3086."

Plaintiff has now filed an unopposed motion for preliminary approval of a proposed class settlement (Dkt. Nos. 131, 133–34).

**ANALYSIS**

"A settlement should be approved if 'it is fundamentally fair, adequate and reasonable.'" *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (citation omitted). Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (Chief Judge Vaughn Walker). Here, the proposed settlement agreement satisfies these requirements.

**1.    BENEFIT TO CLASS MEMBERS.**

The proposed settlement agreement establishes a gross settlement fund of $6,533,250 (Dkt. No. 134-1 at 2). Lead counsel intend to seek up to 30 percent of the gross settlement fund ($1,959,975) for attorney's fees plus reasonable out-of-pocket expenses, as well as an incentive award of $7,500 for the lead plaintiff — all to be paid, to the extent approved, from the gross settlement fund (Dkt. No. 131 at 6). Additionally, the requested third-party settlement administrator estimates administrative costs will amount to $52,940, which would also be paid from the gross settlement fund (Dkt. No. 134-1 at ¶ 7). The net settlement fund remaining after these deductions (where one-half of the fee award will be paid only at the wrap-up of the fund administration) will then be distributed on a pro rata basis to class members, who will each receive a check in the mail (Dkt. No. 131 at 2).

Any balance remaining after the initial distribution will be redistributed to other class members on a pro rata basis (Dkt. No. 134-1 ¶ 6). If the amount is less than $10 per class member, however, and thus "not economically feasible to redistribute," the remainder will be paid as *cy pres* award to either the National Consumer Law Center (plaintiff's preference) or the Consumer Federation of America (defendants' preference), whichever non-profit organization the Court approves of (Dkt. Nos. 131 at 5, 134-1 ¶ 6).

Under the proposed settlement agreement, plaintiff will recover a settlement fund based on gross recovery of $375 per fax, with each class member receiving their pro rata share (Dkt. No. 131 at 8). Since TCPA provides for statutory damages at $500 per fax (or recovery of the actual monetary loss, whichever is greater), plaintiff's gross recovery represents 75 percent of the best possible outcome the class could have obtained through litigation (*see id*. at 8–9). *See* 47 U.S.C. 227(b)(3)(B). The difference between the maximum possible recovery and the gross settlement fund accounts for the risks and costs of litigation, including the risk that defendants' affirmative defense might prevail, the accrued fees and expenses of counsel, and the risks and costs of "inevitable appeals" (Dkt. No. 131 at 8). Given that this proposed settlement agreement comes after over a year of litigation, discovery, and motion practice, both sides have had ample opportunity to carefully assess and weigh the relative strengths and weaknesses of their legal positions. The discounted settlement amount seems to reflect those considerations.

### 2. SCOPE OF THE RELEASE.

The proposed settlement agreement defines the class using the same definition set forth in the class certification order (*compare* Dkt. No. 73 at 12 *with* Dkt. No. 134-1 ¶ 3). Moreover, counsel confirmed during oral argument that the proposed settlement agreement releases only the certified class claim, despite including the language "any and all claims that were asserted or *could have been asserted* in the Litigation" relating to the October 11, 2016 facsimile (*see* Dkt. No. 134-1 ¶ 15). The proposed settlement agreement does not release any claims based on faxes sent on other dates (*ibid*.). The scope of class definition and release in the proposed settlement agreement is appropriately tailored and thus falls within the range of possible approval.

3

### 3. ATTORNEY'S FEES AND INCENTIVE AWARD.

Plaintiff's motion indicates that "Class Counsel will request that the Court approve Plaintiff's request for attorneys' fees equal to 30% of the Settlement Fund, or $1,959,975.00, plus reasonable expenses" (Dkt. No. 131 at 10). In addition, "Class Counsel will also request" an incentive award "to Plaintiff in the amount of $7,500.00 from the Settlement Fund for serving as the class representative" (*id*. at 15). While the prospect of these forthcoming requests does not prevent preliminary approval at this stage, the parties are advised that the requested amounts are subject to close scrutiny and potential reduction at the final approval stage.

In particular, and as cautioned in the Court's Notice Regarding Facts to be Evaluated for Any Proposed Class Settlement, the request for an incentive award to the lead plaintiff is a "red flag" (Dkt. No. 25). Plaintiff's requested $7,500 incentive award "amounts to less than $0.50 from each of the 15,276 class members" (Dkt. No. 131 at 16). The proposed settlement agreement, however, states that the requested amount "will be set by the Court" and that "[t]he parties have not agreed on any such amounts" (Dkt. No. 134-1 ¶ 11). While helpful that the settlement agreement is not conditioned on a specific incentive award amount, it does not automatically eliminate the risk that the proposed award might make a flawed or inadequate settlement more "palatable" to the lead plaintiff (Dkt. No. 25). Nonetheless, because the proposed settlement agreement does not provide for an automatic incentive award, no request for such an award has been made yet, and the settlement agreement is not contingent on the outcome of any such request, preliminary approval remains appropriate.

### 4. OTHER CONSIDERATIONS.

Another factor weighing in favor of preliminary approval is that the proposed settlement agreement came about as a result of extensive mediation efforts supervised by Magistrate Judge Jacqueline Corley, including two in-person settlement conferences and subsequent deliberations (Dkt. No. 131 at 3). This background is not dispositive of but nevertheless relevant to the question of whether this proposed settlement agreement appears to be "the product of serious, informed, non-collusive negotiations." *See In re Tableware*, 484 F. Supp. 2d at 1079.

4

**CONCLUSION**

Subject to the foregoing, plaintiff's unopposed motion for preliminary approval of the class action settlement is **GRANTED**. Class-settlement.com is hereby **APPOINTED** as settlement administrator. The Court will retain jurisdiction over the litigation and the parties until **DECEMBER 31, 2019**.

By **JUNE 6 AT NOON**, counsel shall resubmit the proposed notice for Court approval with the following modifications. *First*, the proposed notice must include, plainly and conspicuously, the estimated amount of attorney's fees, expenses, and incentive award class counsel expect to request. The estimated amount must be expressed as both a percentage and dollar amount. *Second*, in addition to making clear how the requested attorney's fees, expenses, incentive award, and administration costs will impact the settlement fund, the notice must provide clear estimates (also expressed in dollar amounts) of the net amounts that will be ultimately distributed to class members. All of the foregoing must be explained in plain English in the notice. The notice should also state in Spanish that a Spanish-language version of the notice is available at class counsel's website. Both sides shall agree on the form of translation.

If counsel submits a revised version of the proposed notice with the foregoing revisions by May 31 at 5:00 p.m., then the undersigned judge will try to respond by the following day. In all events, counsel shall submit, along with the proposed notice, a revised proposed timeline for administering the settlement that takes into account the delay in obtaining Court approval for said notice.

The final pretrial conference and trial dates, as well as other pending deadlines in this action, are hereby **VACATED** and will be reset if final approval is not granted.

**IT IS SO ORDERED.**

Dated: May 30, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE