1

2  SCHUBERT JONCKHEER & KOLBE LLP
   ROBERT C. SCHUBERT (62684)
3  WILLEM F. JONCKHEER (178748)
   Three Embarcadero Center, Suite 1650
4  San Francisco, CA 94111
   Telephone:  (415) 788-4220
5  Email: rschubert@schubertlawfirm.com
   Email: wjonckheer@schubertlawfirm.com
6

7  *Class Counsel*

8
   ANDERSON & WANCA
9  BRIAN J. WANCA *(pro hac vice)*
   RYAN M. KELLY *(pro hac vice)*
10 3701 Algonquin Road, Suite 500
   Rolling Meadows, IL 60008
11 Telephone:  (847) 368-1500
   Email: bwanca@andersonwanca.com
12 Email: rkelly@andersonwanca.com

13
   *Lead Class Counsel*
14

15              **UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**
16

17 JOHN C. ETTER, individually and as the     Case No. 17-CV-00184-WHA
   representative of a class of similarly-situated
18 persons,
                                              **NOTICE OF MOTION AND MOTION**
19         Plaintiff,                         **FOR ATTORNEYS' FEES AND**
                                              **REIMBURSEMENT OF**
20       v.                                   **REASONABLE EXPENSES AND**
                                              **SERVICE AWARD; MEMORANDUM**
21 ALLSTATE INSURANCE COMPANY,                **OF POINTS AND AUTHORITIES**
   ALLSTATE INDEMNITY COMPANY,
22 ALLSTATE PROPERTY AND CASUALTY
   INSURANCE COMPANY, ALLSTATE
23 NORTH BROOK INDEMNITY COMPANY,            Hon. William Alsup
   ALLSTATE INSURANCE COMPANY OF
24 CALIFORNIA, LOUIS ODIASE and JOHN         Motion Hearing Date:  October 25, 2018
   DOES 1-5,                                 Motion Hearing Time:  12:00 p.m.
25                                            Courtroom 12 -  19th Floor
26         Defendants.

27

28
                                                          Case No. 17-CV-00184-WHA
   NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, SERVICE AWARD

## NOTICE OF MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**Please Take Notice** that on October 25, 2018, at 12:00 p.m., in Courtroom 12 – 19th Floor of the Honorable William Alsup, Plaintiff/Class Representative John C. Etter and class counsel Anderson & Wanca and Schubert Jonckheer & Kolbe LLP ("Class Counsel") will petition the Court, for entry of an order as follows:

1.      Awarding as attorneys' fees payable to Class Counsel the sum of $1,959,975.00, an amount equal to 30% of the $6,533,250.00 settlement fund established by the Class Action Settlement Agreement in this case, for the benefits conferred upon the class;

2.      Approving reimbursement of reasonable expenses incurred by class counsel in the amount of $144,498.00 (including an expense reserve of $1,200.00), which includes payment of settlement-administration costs to the Settlement Administrator in the amount of  $76,410.00 ($53,415 for Notice of Pendency and $53,415.00 for Class Notice and Settlement Administration;

3.      Approving payment of a Service Award to Plaintiff John Etter in the sum of $7,500.00 to compensate him for his efforts as a class representative; and

4.      Directing these amounts to be paid when and in the manner provided in Paragraph 14 of the Class Acton Settlement Agreement.

This motion is made on the grounds that (1) Class Counsel created a common fund that confers a substantial benefit upon the class and are entitled to recover their attorneys' fees from the fund; (2) an award of attorneys' fees in the amount of $1,959,975.00 is reasonable under the circumstances presented in this case; (3) the expenses incurred by Class Counsel in the amount of $144,498.00 were necessary for the proper prosecution of the case and were reasonably incurred; and (4) Plaintiff should be compensated for his efforts which contributed to a substantial class recovery.

This motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declarations of Ryan M. Kelly, John C. Etter, and Willem F. Jonckheer in support of this motion, the Class Action Settlement Agreement, and on such further briefs and argument of counsel that will be received before or during the hearing on the motion.

1  DATED: July 26, 2018          JOHN C. ETTER, individually and on behalf of a
2                                class of similarly situated persons

3                                By: s/ Ryan M. Kelly

4                                BRIAN J. WANCA *(pro hac admitted)*
                                 RYAN M. KELLY *(pro hac admitted)*
5                                ANDERSON + WANCA
                                 3701 Algonquin Road, Suite 500
6                                Rolling Meadows, IL 60008
                                 Telephone: (847) 368-1500
7                                Facsimile:  (847) 368-1501
8                                bwanca@andersonwanca.com
                                 rkelly@andersonwanca.com
9
                                 *Lead Class Counsel*
10

11                               ROBERT C. SCHUBERT
12                               WILLEM F. JONCKHEER
                                 SCHUBERT JONCKHEER & KOLBE LLP
13                               Three Embarcadero Center, Suite 1650
                                 San Francisco, CA 94111
14                               Telephone: (415) 788-4220
                                 Facsimile:  (415) 788-0161
15                               rschubert@schubertlawfirm.com
16                               wjonckheer@schubertlawfirm.com

17                               *Class Counsel*

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, SERVICE AWARD

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR ATTORNEYS FEES AND REIMBURSEMENT OF REASONABLE
EXPENSE ..................................................................................................................................1

INTRODUCTION ........................................................................................................1

ARGUMENT .................................................................................................................4

I.      Class Counsel are Entitled to Recover a Reasonable Fee from the Settlement Fund....4

II.     Thirty Percent (30%) of the Settlement Fund Is a Reasonable Fee ...........................5

A.  Class Counsel Obtained an Exceptional Result ...........................................6

B.  Class Counsel Faced a Substantial Risk of Non-Payment ...........................7

C.  The Requested Reward Is Consistent With Fee Recoveries in Comparable Cases ......9

D.  Class Counsel Experienced Numerous Burdens Litigating the Case .........11

E.  Class Counsel Took the Case on Contingency ...........................................13

F.  Class Counsel's Skill and Experience Support the Requested Award .......13

G.  The Issues Were Complex ...........................................................................14

H.  No Class Member Has Objected to Date. ...................................................14

I.  A Lodestar Cross-Check Supports the Requested Fees ..............................15

1.   The base lodestar .............................................................................16

2.   The hours expended by Class Counsel are reasonable .....................16

3.   Class counsel's standard rates are reasonable.................................17

4.   A multiplier is easily supported in this case ...................................17

III.    Class Counsels' Expenses Are Reasonable .............................................................18

IV.     Plaintiff is Entitled to an Incentive Award .............................................................19

CONCLUSION ...........................................................................................................21

# TABLE OF AUTHORITIES

**Page**

**Cases**

*ACS Systems, Inc. v. St. Paul Fire and Marine Ins. Co.*,
  147 Cal. App. 4th 137 (Cal. App. 2007).............................................................................9

*Adoma v. University of Phoenix, Inc.*,
  913 F. Supp. 2d 964 (E.D. Cal. 2012)..............................................................................17

*Aguilar v. Wawona Frozen Foods*,
  No. 15-cv-0093-DAD-EPG, 2017 WL 2214936
  (E.D. Cal. May 19, 2017)...............................................................11, 13, 15, 16, 18

*Albert v. GMRI, Inc.*,
  No. 07-cv-1895-WBS-DAD, 2008 WL 4891201 (E.D. Cal. Nov. 12, 2008).....................5

*Arthur v. Sallie Mae, Inc.*,
  2:10-cv-00198, Doc. No. 184-1 (W.D. Wash. Oct. 11, 2011) ...........................................7

*Bais Yaakov of Spring Valley v. FCC*,
  852 F.3d 1078 (D.C. Cir. 2017) .......................................................................................8

*Barbosa v. Cargill Meat Sols. Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013) .........................................................................1, 5, 17

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015).....................................................................................15

*Boeing Co. v. Van Germet*,
  444 U.S. 472 (1980)...........................................................................................................4

*Bouman v. Block*,
  940 F.2d 1211 (9th Cir. 1991) ........................................................................................17

*Camacho v. Bridgeport Fin., Inc.*,
  523 F.3d 973 (9th Cir. 2008) ..........................................................................................17

*Chalmers v. City of Los Angeles*,
  796 F.2d 1205 (9th Cir. 1986) ........................................................................................17

*Charlebois v. Angels Baseball LP*,
  993 F. Supp. 2d 1109 n.6 (C.D. Cal. 2012). ...................................................................16

*Cohorst v. BRE Props., Inc.*,
  No. 3:10-cv-2666-JM-BGS, 2011 WL 7061923 (S.D. Cal. Nov. 14, 2011) ....................13

*Couser v. Aprio Healthcare, Inc.*,
  13-cv-00035-JVS-RNB, Doc. No. 50, n.3 (C.D. Cal. Mar. 9, 2015)................................10

## TABLE OF AUTHORITIES (Cont'd.)

**Page**

**Cases**

*Craft v. County of San Bernardino,*
  624 F. Supp. 2d 1113 (C.D. Cal. 2008) ..............................................5

*Craftwood II, Inc. v. Tomy International, Inc.,*
  SACV12-1710, Doc. 141 at 7 (March 2, 2015, C.D. Cal) .........................9, 21

*Dakota Medical, Inc. v. Rehabcare Group, Inc.,*
  2017 WL 4180497 (E.D. Cal. Sept. 21, 2017) ....................................9, 21

*Daniel Joseph v. Trueblue Inc.,*
  3:14-cv-05963-BHS, Doc. 131 at 5 (W.D. Wash. March 6, 2017) ..............9, 21

*Emmons v. Quest Diagnostic Clinical Laboratories, Inc.,*
  2017 WL 749018, at * 7 (E.D. Cal. Feb.27, 2017) ...............................13

*Fischel v. Equitable Life Assur. Soc'y of U.S.,*
  307 F.3d 997 (9th Cir. 2002) .........................................8, 14, 17, 18

*Gene and Gene, LLC v. BioPay, LLC,*
  541 F.3d 318 (5th Cir. 2008) .............................................8

*Gibson & Company Insurance Brokers Inc. v. QFA Royalties LLC,*
  06-cv-05849-PSG-PLA, Doc. 212 (C.D. Cal. 2009) ............................21

*Gong-Chun v. Aetna, Inc.,*
  No. 1:09-cv-01995-SKO, 2012 WL 2872788 (E.D. Cal. July 12, 2012) .........17

*Gunter v. Ridgewood Energy Corp.,*
  223 F.3d 190 n.1 (3d Cir. 2000)) ......................................14

*Gutierrez v. Wells Fargo Bank, N.A.,*
  No. C 07-05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015)..............5

*Hageman v. AT&T Mobility LLC,*
  No. 13-cv-00050-BLG-RWA, 2015 WL 9855925 (D. Mont. Feb. 11, 2015).........1, 10, 11

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983).....................................................6

*Hofstetter v. Chase Home Fin., LLC,*
  No. C 10-01313 WHA, 2011 WL 5545912 (N.D. Cal. Nov. 14, 2011) ...........18

*Il Fornaio (Am.) Corp. v. Lazzari Fuel Co., LLC,*
  No. C 13-05197 WHA, 2015 WL 2406966 (N.D. Cal. May 20, 2015).............5

**TABLE OF AUTHORITIES** (Cont'd.)

**Page**

**Cases**

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
    792 F. Supp 2d 1028 (N.D. Ill. 2011) ...................................................................19

*In re Cendant Corp. Secs. Litig.*,
    404 F.3d 173 (3d Cir. 2005)...................................................................15, 18

*In re Equity Funding Corp. of Am. Secs. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977) .....................................................13

*In re Immune Response Secs. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007)..................................................7

*In re Media Vision Tech. Secs. Litig.*,
    913 F. Supp. 1362 (N.D. Cal. 1995) .....................................................19

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................19

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1043 (N.D. Cal. 2008) ................................................5

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ................................................................6

*In re Oral Sodium Phosphate Solution-Based Prods. Liab.*
    No. MDL 2066, 2010 WL 5058454 n.28 (N.D. Ohio 2010) ................18

*In re Pacific Enters. Secs. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ..................................................................5

*In re Rite Aid Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005); .................................................................15

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ................................................................4

*Keller v. Elec. Arts, Inc.*,
    No. 4:09-cv-1967 CW, 2015 WL 5005057 (N.D. Cal. Aug. 18, 2015)............................14

*Knight v. Red Door Salons, Inc.*,
    No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ...........5

*Lewis v. Starbucks Corp.*,
    No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690 (E.D. Cal. Sept. 11,
    2008); ....................................................................................................15

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, EXPENSES, SERVICE AWARD

# TABLE OF AUTHORITIES (Cont'd.)

**Page**

**Cases**

*Linney v. Cellular Alaska Part.*,
   No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300 (N.D. Cal. July 18, 1997)...............19

*Lopez v. Youngblood*,
   No. 07-cv-0474 DLB, 2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ........................14, 15

*Louie v. Kaiser Fund Health Plan, Inc.*,
   No. 08cv0795 IEG RBB, 2008 U.S. Dist. LEXIS 78314 (S.D. Cal. Oct. 6,
   2008). .....................................................................................................................20, 21

*Mego Fin. Corp. Secs. Litig.*,
   213 F.3d 454, 457 (9th Cir. 2000); . ................................................................................5

*Mitchinson v. Love's Travel Stops & Country Stores, Inc.*,
   No. 1:15-cv-01474-DAD-BAM, 2017 WL 2289342 (E.D. Cal. May 25, 2017)............4, 6

*Odrick v. UnionBanCal Corp.*,
   2012 U.S. Dist. LEXIS 171413 (N.D. Cal. Dec. 3, 2012) ................................................21

*Pacific Enterprises*,
   47 F.3d at 379 ..............................................................................................................7, 14

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ........................................................................................1, 5

*Pelletz v. Weyerhaeuser Co.*,
   592 F. Supp. 2d 1322 & n.9 (W.D. Wash. 2009)..............................................................21

*Pimental v. Google, Inc.*,
   4:11-cv-02585, Doc. No. 84-1 (N.D. Cal. Oct. 5, 2012) ...................................................7

*Rodriquez v. West Publ'g Corp.*,
   563 F.3d 94 (9th Cir. 2009) .............................................................................................20

*Sandusky Wellness Ctr. v. ASD Specialty Healthcare, Inc.*,
   No. 16-3741, 863 F.3d 460 (6th Cir. July 11, 2017).........................................................9

*Satterfield v. Simon & Schuster, Inc.*,
   4:06-cv-02893, Doc. No. 112-1 (N.D. Cal. Feb. 17, 2010) ...............................................7

*State Farm General Ins. Co. v. JT's Frames, Inc.*,
   2010 WL 297999 (Cal. App. 2010) ...................................................................................9

*Taylor v. FedEx Freight, Inc.*,
   No. 13-cv-1137-DAD-BAM, 2016 WL 6038949 (E.D. Cal. Oct. 13, 2016) ......6, 9, 13, 18

**TABLE OF AUTHORITIES** (Cont'd.)

**Page**

**Cases**

*True Health Chiropractic, Inc. v. McKesson Corp.*,
    --- F.3d ---, No. 16-17123, 2018 WL 3431723 (9th Cir. July 17, 2018) ........................8, 9

*Van Vranken v. Atlantic Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995));.......................................................................18, 21

*Vandervort v. Balboa Capital Corp.*,
    8 F. Supp. 3d 1200 (C.D. Cal. 2014) ............................................................9, 10, 18

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...........................................................4, 6, 8, 18

*West v. Circle K Stores, Inc.*,
    No. Civ. S-04-0438 WBS GGH, 2006 U.S. Dist. LEXIS 76558 (E.D. Cal. Oct.
    19, 2006). ......................................................................................................19, 21

*Williams v. MGM-Pathe Commc'ns Co.*,
    129 F.3d 1026 (9th Cir. 1997) ....................................................................10

*Young v. Polo Retail, LLC*,
    No. C 02 4546 VRW, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007)...........................15, 17

**Statutes**

47 U.S.C. § 227(b)(1)(C) ...............................................................................................3

**Other Authorities**

4 William B. Rubenstein, Newberg on Class Actions § 11:38 (4th ed. 2008) .............................20
Brian T. Fitzpatrick & Robert C. Gilbert, *An Empirical Look at Compensation in
    Consumer Class Actions*, 11 N.Y.U. J.L. & Bus. 767, 770 (2015)....................................7
Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements:
    An Empirical Study*, 1 J. Empirical Legal Stud. 27, 70 (2004).........................................19
Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action
    Plaintiffs: An Empirical Study,* 53 U.C.L.A.L. Rev. 1303 (2006).....................................20

**Rules & Regulations**

Fed. R. Civ. P. 23(h) .......................................................................................................2
47 C.F.R. § 64.1200(a)(4)(iv) .........................................................................................8

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    29 F.C.C. Rcd. 13998, 14002 ¶ 10 (Oct. 30, 2014) ...........................................8

**STATEMENT OF ISSUES TO BE DECIDED**

1.       Whether Class Counsel should be awarded a 30% attorneys' fee, where the standard 25% benchmark may "be adjusted upward or downward to account for any unusual circumstances," *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989), where "in most common fund cases, the award exceeds th[e] benchmark," *Barbosa v. Cargill Meat Sols. Corp.,* 297 F.R.D. 431, 448 (E.D. Cal. 2013), and where Class Counsel achieved an "extraordinary" result, *Hageman v. AT&T Mobility LLC*, No. 13-cv-00050-BLG-RWA, 2015 WL 9855925, at *5-6 (D. Mont. Feb. 11, 2015), by obtaining a non-reversionary common fund of over $6.5 million, representing 75% of the ordinary statutory damages, in a case with serious obstacles to establishing liability or insurance coverage, in what appears to be the first TCPA junk-fax settlement in this district.

2.       Whether the Court should award reimbursement of Class Counsels' reasonable expenses in the amount of $144,498.00 (including an expense reserve of $1,200.00), which includes payment of settlement-administration costs to the Settlement Administrator in the amount of $76,410.00. (Notice of Pendency $22,995.00 / Class Notice/Settlement Administration $53,415.00).

3.       Whether the Court should approve a Service Award of $7,500.00 to Plaintiff John C. Etter, where district courts in this Circuit have awarded as high as $15,000.00 in TCPA cases, and where Plaintiff and his employees devoted numerous hours in support of all aspects of the litigation including the initial investigation, written discovery, three depositions, and attendance at the first mediation.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.       Introduction.**

Plaintiff John C. Etter ("Plaintiff"), submits this Motion and Memorandum in Support of Award of Attorney's Fees and Reimbursement of Reasonable Expenses and Service Award,

pursuant to Federal Rule of Civil Procedure 23(h), and this Court's Order entered June 11, 2018, regarding Approval of Notice of Class Action Settlement and Scheduling Dates.  (Doc. 138).

In this certified class action, Class Counsel achieved a $6,533,250.00 non-reversionary cash recovery for 17,432 California residents who were blasted with commercial auto insurance faxes from Defendant Louis Odiase ("Odiase"), an agent of Allstate Insurance Company ("Allstate"). To Class Counsel's knowledge, this is the first reported TCPA class-wide settlement in this district. (Declaration of Ryan Kelly ("Kelly Decl."), ¶ 28).  The proposed settlement fund provides for a gross recovery of $375 per fax – 75% of the ordinary statutory damage under the TCPA of $500 per fax. After attorneys' fees and costs and a service award to Plaintiff are deducted, each class member will receive $254, an excellent result. The net settlement will be automatically distributed to class members, who will not have to submit claims or even prove they received any fax transmissions.  By any metric, this settlement is a tremendous success for the class.

Even more remarkable is that this case succeeded when the law made any recovery problematic.  Plaintiff is unaware of any California court that has held that insurance coverage exists for junk-fax cases. (Kelly Decl., ¶ 28).  Nevertheless, Class Counsel secured full policy limits ($1 million) from Defendant Odiase's Errors and Omissions insurance carrier for the Settlement Fund. To Class Counsel's knowledge, Allstate has not been previously held liable for the actions of its independent contractor agents regarding TCPA junk faxing.  (*Id.*)  Indeed, Allstate had a written policy prohibiting the transmission of junk faxes by its insurance agents, and did not know Defendant Odiase sent advertisements by fax. Yet Class Counsel, through their excellent legal work, as evidence in securing class certification, and diligence in pursuing this matter, persuaded the Allstate Defendants to pay an additional $5,533,250.00 to resolve the claims.

Settlement did not come early or easily.  This suit was filed on January 17, 2017 in the United States District Court, Northern District of California  by Class Counsel on behalf of Plaintiff and the Class against Allstate, its related entities Allstate Indemnity Company, Allstate Property and

Casualty Insurance Company, Allstate Northbrook Indemnity Company, Allstate Insurance Company of California (collectively, "Allstate") and Louis Odiase ("Odiase," and collectively with Allstate, "Defendants") alleging violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227(b)(1)(C) ("TCPA").  (Kelly Decl., ¶ 10).  The Court's docket reflects extensive litigation in this suit.

The parties battled in all aspects of the litigation, throughout discovery, class certification, and dispositive motions, and to the brink of trial. Class Counsel faced off against the highest caliber defense counsel. Discovery consumed tremendous time and resources.  It involved, among other things, Plaintiff answering ten (10) sets of written discovery. (Kelly Decl., ¶ 30).  In addition, Class Counsel took or defended sixteen (16) depositions across the country, reviewed 4,344 pages of documents produced by Defendants, reviewed 15,395 recorded telephone calls made to Plaintiff's business, reviewed and analyzed eight (8) electronic databases, issued three (3) out of district subpoenas on third parties, and engaged in numerous discovery meetings and conferences. (*Id.*, ¶¶ 30, 31).

A motion for class certification was fully briefed and successfully argued. (*Id.*, ¶¶ 14-17). Plaintiff's employee and Class Counsel prepared for and attended the first unsuccessful mediation on February 6, 2018, before Magistrate Judge Corley.  (Kelly Decl., ¶ 18; Declaration of John C. Etter ("Etter Decl."), ¶ 9). When no settlement could be reached, Class Counsel briefed cross motions for summary judgment and began preparing trial materials. (Kelly Decl., ¶¶ 20-22)  Only then was a second mediation with U.S. Magistrate Judge Jacqueline Scott Corley successful.  (*Id.*, ¶ 23).

For their efforts, Class Counsel request an award of attorneys' fees equal to 30% of the common fund.  This request is well justified under Ninth Circuit standards, especially given the exceptional result obtained and the massive undertaking to achieve it.  The average class member recovery dwarfs the recoveries in nearly every comparable settlement.  It compares favorably to other TCPA settlements in this Circuit, in which courts have awarded 30% to one-third as fees.

The requested fees are also amply supported by a lodestar cross-check.  Class Counsel devoted considerable time, energy, and resources to prosecuting these TCPA claims against motivated Defendants, backed by highly-skilled legal defense teams.  Because Class Counsel's loadstar is $783,151.10, the requested fee produces an implied multiplier of 2.5 well within the range customarily approved in the Ninth Circuit and nationwide.

In addition, Class Counsel's requested reimbursement of expenses of $144,498.00 is reasonable, as all expenses incurred were of the type and amount necessary to successfully prosecute the claims.  Finally, the service award to Plaintiff of $7,500.00 should be approved for his role in representing the class and contributing to the excellent result obtained.

## ARGUMENT

### I.     Class Counsel Are Entitled to Recover a Reasonable Fee from the Settlement Fund

It is axiomatic that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Germet*, 444 U.S. 472, 478 (1980).  The purpose of this doctrine is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).  To determine the appropriate fee, the district court may apply one of two methods: the percentage method or the lodestar method.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  "Under either approach, reasonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion. [internal quotes and citations omitted]."  *Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:15-cv-01474-DAD-BAM, 2017 WL 2289342, at *6 (E.D. Cal. May 25, 2017).

Class Counsel submit that the percentage method is appropriate in this contingency representation. Although courts in this Circuit may use the lodestar method to calculate fees, "[t]he percentage-of-recovery method is favored in common-fund cases because it allows courts to award

-4-                                  Case No. 17-CV-00184-WHA

1    fees from the fund in a manner that rewards counsel for success and penalizes it for failure." *Albert*

2    *v. GMRI, Inc.*, No. 07-cv-1895-WBS-DAD, 2008 WL 4891201, at *11 (E.D. Cal. Nov. 12, 2008).

3    There is a "general trend towards the percentage of the fund method to award class attorneys' fees"

4    because it "aligns the interests of counsel and the class by allowing class counsel to directly benefit

5    from increasing the size of the class fund." *Craft v. County of San Bernardino*, 624 F. Supp. 2d

6    1113, 1123 (C.D. Cal. 2008) (citations omitted); *cf. Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-

7    05923 WHA, 2015 WL 2438274, at *8 (N.D. Cal. May 21, 2015) (applying lodestar method to

8    award $18.5 million fee on $203 million "megafund," which represented 4.5 lodestar multiplier).

9         This Court has applied the percentage method with a lodestar cross-check. *See, e.g.*, *Il*

10   *Fornaio (Am.) Corp. v. Lazzari Fuel Co., LLC*, No. C 13-05197 WHA, 2015 WL 2406966, at *3

11   (N.D. Cal. May 20, 2015). There is no reason to treat this case differently.

12   **II.     Thirty Percent (30%) of the Settlement Fund Is a Reasonable Fee**

13        The Settlement Agreement is attached to the Kelly Declaration as Exhibit 1.  Class Counsel

14   seek thirty percent (30%) of the $6,533,250.00 settlement fund as their attorneys' fees.  (Kelly Decl.,

15   ¶ 26).  This request is reasonable and justified under applicable Ninth Circuit standards.  Although

16   the Ninth Circuit has observed that 25% is a proper benchmark, it is only the starting point for which

17   the fee may "be adjusted upward or downward to account for any unusual circumstances" involved

18   in the case.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  "[I]n most

19   common fund cases, the award exceeds th[e] benchmark."  *Barbosa v. Cargill Meat Sols. Corp.,* 297

20   F.R.D. 431, 448 (E.D. Cal. 2013) (quoting *Knight v. Red Door Salons, Inc.,* No. 08-01520 SC, 2009

21   WL 248367, at *3 (N.D. Cal. Feb. 2, 2009)); *see also In re Omnivision Techs., Inc.,* 559 F. Supp. 2d

22   1043, 1047 (N.D. Cal. 2008).  And fee recoveries equal to one-third of the common fund have been

23   frequently affirmed by the Ninth Circuit.  *See, e.g.*, *Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 457,

24   460 (9th Cir. 2000); *In re Pacific Enters. Secs. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995).

To assess the reasonableness of a class attorney's fee request, the court applies the following factors identified by the Ninth Circuit: (1) the extent to which class counsel achieved exceptional results for the class, (2) whether the case was risky for class counsel, (3) the market rate in comparable cases for a particular field of law, (4) the burdens class counsel experienced while litigating the case, and (5) whether the case was handled on a contingency basis.  *See, e.g.*, *Taylor v. FedEx Freight, Inc.*, No. 13-cv-1137-DAD-BAM, 2016 WL 6038949, at *6 (E.D. Cal. Oct. 13, 2016) (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015)).  The court also considers counsel's skill and experience, the complexity of the issues, and the reaction of the class.  *See, e.g., Mitchinson*, 2017 WL 2289342, at *7.

The requested fee here measures very well against these standards.  It is justified by the substantial value Class Counsel obtained for the class; it is supported by the considerable risks Class Counsel assumed in bringing this case; it is in line with the market rate in comparable TCPA class settlements; it reflects the extensive burdens of litigating the case on a contingency basis; it is the product of negotiations by skilled advocates; and there have been no objections by the Class to date.

### A.  Class Counsel Obtained an Exceptional Result

The "most critical factor" in evaluating reasonable attorneys' fees "is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see also Vizcaino*, 290 F.3d at 1048. This factor weighs heavily in favor of the requested fee. The $6,533,250.00 recovery represents a degree of success unparalleled in junk-fax litigation in this district.  It is remarkable not only for its size, but also for its fair and equitable distribution to the class. This appears to be the first junk-fax class settlement in this district.  (Kelly Decl., ¶ 28). When considered against the substantial liability defenses asserted by Allstate and the insurance coverage problems, it is an exceptional result.

Perhaps most importantly, the settlement automatically distributes the entire common fund (after fees and costs and the service award are deducted) to class members, with no funds reverting to Defendants.  (Settlement Agreement, ¶¶ 6,10,14).  By contrast, each of the "comparable"

settlements contain claims-made structures, with many reverting unclaimed funds to the defendant. Because consumer class actions typically experience low claims rates, an automatic distribution is more likely to provide meaningful compensation to the class.  *See* Brian T. Fitzpatrick & Robert C. Gilbert, *An Empirical Look at Compensation in Consumer Class Actions*, 11 N.Y.U. J.L. & Bus. 767, 770 (2015).

A number of TCPA settlements have imposed "ceilings" on class member recoveries, further depressing the actual class recovery. *See, e.g.*, *Pimental v. Google, Inc.*, 4:11-cv-02585, Doc. No. 84-1 (N.D. Cal. Oct. 5, 2012) (recovery capped at $500 per class member) (attached to Kelly Decl. as Exhibit 3); *Arthur v. Sallie Mae, Inc.*, 2:10-cv-00198, Doc. No. 184-1 (W.D. Wash. Oct. 11, 2011) (recovery capped at $500 per class member) (attached to Kelly Decl. as Exhibit 4); *Satterfield v. Simon & Schuster, Inc.*, 4:06-cv-02893, Doc. No. 112-1 (N.D. Cal. Feb. 17, 2010) (recovery capped at $175 per class member) (attached to Kelly Decl. as Exhibit 5). Here, by contrast, class members will be paid for all junk faxes they received, with no cap on their payouts.

This automatic distribution, non-reversionary settlement provides the entire net settlement fund for the class, unlike the "maximum potential recovery" often not reached in other settlements due to low claims rates and caps on member recoveries. This reflects a high degree of success obtained, particularly *vis a vis* other comparable settlements. This factor weighs heavily in support of the requested fee.

### B.  Class Counsel Faced a Substantial Risk of Non-Payment

Class Counsel assumed a high degree of risk in taking this case on a pure contingency basis. (Kelly Decl., ¶¶ 12, 29).  This substantial risk is "a relevant factor in addressing the proposed fee award" under the percentage method. *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1175-76 (S.D. Cal. 2007) (citing *Pacific Enterprises*, 47 F.3d at 379). "[A]ttorneys whose compensation depends on their winning the case must make up in compensation in the cases they

win for the lack of compensation in the cases they lose." *Vizcaino*, 290 F.3d at 1051. The risks here

justify the 30% fee request.

Class Counsel confronted daunting risks from the very beginning. *See Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1009 (9th Cir. 2002) (risks should be assessed at the outset). The two firms accepted this challenge on a pure contingency basis. Each risked a complete loss unless they were successful with the litigation. In this context, "risk should be assessed when an attorney determines that there is merit to the client's claim and elects to pursue the claim on the client's behalf." *Fischel*, 307 F.3d at 1009.

When Class Counsel elected to pursue this case, they confronted several risks. Any of these factual and legal issues could have foreclosed recovery: (1) the risk that Odiase had insufficient financial resources to contribute to a settlement; (2) the risk that Odiase's insurance carrier would assert that no indemnity coverage existed; (3) the risk that the FCC's regulation requiring opt-out disclosure on "solicited" faxes would be invalidated;[1] (4) the risk that Defendants could establish (as Odiase argued) that he had secured "prior express invitation or permission" from fax recipients; (5) the risk that the Allstate Defendants would not be liable for the actions of an independent contractor, because they did not know Odiase sent the faxes and because the Allstate Defendants had a written policy prohibiting its agents to send advertisements by fax, leaving only judgment-proof Odiase as a party; (6) the risk that Defendants could defeat class certification;[2] and (7) the risk that Odiase, even

---

[1]     At the time, several parties had challenged the validity of the FCC's regulation requiring opt-out disclosures on "solicited" advertisements in § 64.1200(a)(4)(iv). *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 29 F.C.C. Rcd. 13998, 14002 ¶ 10 (Oct. 30, 2014). After the settlement in this case was reached, the Ninth Circuit held that this regulation was "invalidated" by the D.C. Circuit's decision in *Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078 (D.C. Cir. 2017). *True Health Chiropractic, Inc. v. McKesson Corp.*, --- F.3d ---, No. 16-17123, 2018 WL 3431723, at *4–5 (9th Cir. July 17, 2018).

[2]     "[T]here are no invariable rules regarding the suitability of a particular case filed under this subsection of the TCPA for class treatment; the unique facts of each case generally will determine whether certification is proper." *Gene and Gene, LLC v. BioPay, LLC*, 541 F.3d 318, 328 (5th Cir. 2008). Although a majority of courts have certified TCPA/junk-fax classes, many have not. *See, e.g.*,

if ultimately liable for the faxes, would not be able to satisfy judgment. (Kelly Decl., ¶ 26). *See State Farm General Ins. Co. v. JT's Frames, Inc.,* 2010 WL 297999 (Cal. App. 2010); *ACS Systems, Inc. v. St. Paul Fire and Marine Ins. Co.,* 147 Cal. App. 4th 137 (Cal. App. 2007).

In addition, Class Counsel had previously devoted substantial time and resources to unsuccessfully litigating class certification in another TCPA fax case in this district, which case was recently remanded by the Ninth Circuit for further proceedings after plaintiff's successful Rule 23(f) petition. *See True Health Chiropractic, Inc. v. McKesson Corp.,* __ F.3d__, 2018 WL 3431723 (9th Cir. July 17, 2018). The substantial risks Class Counsel faced at the inception of the case—possibly resulting in no class recovery and no fees for counsels' efforts—strongly supports the fee request.

**C. The Requested Award Is Consistent With Fee Recoveries in Comparable Cases**

The requested fee is also supported by comparison to awards in similar cases, another critical factor. *See Taylor*, 2016 WL 6038949, at *6. This settlement compares favorably with other large TCPA settlements in this Circuit in which similar percentages were awarded to class counsel. *See Daniel Joseph v. Trueblue Inc.,* 3:14-cv-05963-BHS, Doc. 131 at 5 (W.D. Wash. March 6, 2017) (awarding 30% of $5 million settlement fund) (Order attached to Kelly Decl. as <u>Exhibit 6</u>); *Craftwood II, Inc. v. Tomy International, Inc.*, SACV12-1710, Doc. 141 at 7 (March 2, 2015, C.D. Cal) (awarding 30% of $10 million settlement fund) (Judgment and Order attached to Kelly Decl. as <u>Exhibit 7</u>); *Dakota Medical, Inc. v. Rehabcare Group, Inc.,* 2017 WL 4180497 (E.D. Cal. Sept. 21, 2017) (awarding 33 1/3% of $25 million settlement fund.)

Take, for instance, the recent *Vandervort* class action litigation in the Central District of California. *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200 (C.D. Cal. 2014). There, the court deemed "exceptional" a TCPA/junk fax recovery with a potential maximum recovery of $3.3

---

*Sandusky Wellness Ctr. v. ASD Specialty Healthcare, Inc.*, No. 16-3741, 863 F.3d 460 (6th Cir. July 11, 2017).

million, and awarded fees equal to one-third of that amount. *Id.* at 1209. The *Vandervort* class was guaranteed only $2.3 million, however; the settlement would reach $3.3 million only through an extraordinary claims rate. *Id.* at 1204. Furthermore, that settlement imposed caps on amounts class members could recover, regardless of the number of junk faxes they received. *Vandervort v. Balboa Capital Corp.*, No. SACV 11-1578-JLS Doc. 128, at 3, 4 (C.D. Cal. Jan. 20, 2014) (Final Judgment attached to Kelly Decl. as Exhibit 8).

The instant settlement surpasses *Vandervort* by every measure. The *Vandervort* settlement averaged only $57 per class member, assuming *all* members made claims to hit the maximum settlement value; here, each class member will recover $254 per fax (or $375 per fax less attorneys' fees and expenses and plaintiff's incentive award). In *Vandervort*, class members were required to produce the faxes or declare under penalty of perjury that they received them to recover, *Vandervort*, 8 F. Supp. 3d at 1204), but here, class members can participate without having proof of any kind. If the "exceptional result" in *Vandervort* supported one-third of a hypothetical fund "ceiling" that might never be attained, the same percentage of a guaranteed, non-reversionary fund is no less justified.[3]

This result also compares favorably with another large TCPA settlement in this Circuit, *Hageman v. AT&T Mobility LLC*. In that case, the court awarded $15 million as attorneys' fees, equating to one-third of the $45 million recovery. *Hageman v. AT&T Mobility LLC*, No. 13-cv-00050-BLG-RWA, 2015 WL 9855925, at *5-6 (D. Mont. Feb. 11, 2015). The court granted one-third as attorneys' fees because it regarded the result as "extraordinary." *Id.* at *4. However, the

---

[3]      The Ninth Circuit has instructed that fees be awarded based on the maximum *potential* class recovery, rather than the amount *actually* paid. *See Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997). For this reason, in claims-made settlements, attorneys' fees typically represent a substantially higher percentage of the amount actually paid by the defendant. *See, e.g., Couser v. Aprio Healthcare, Inc.*, 13-cv-00035-JVS-RNB, Doc. No. 50, n.3 (C.D. Cal. Mar. 9, 2015) (Order attached to Kelly Decl. as Exhibit 9). Here, by contrast, Class Counsel seek 30% of what Defendants will actually pay.

class did not encounter the insurance coverage and vicarious liability issues. *See Hageman*, Doc. No.
60, at 12-14 (Application attached to Kelly Decl. as Exhibit 10).  Here, on the other hand, Class
Counsel faced far greater challenges. As stated herein, Odiase had insufficient financial resources
and no California coverage precedent requiring his insurance carrier to indemnify. (Kelly Decl., ¶
28).  Plaintiff had no Ninth Circuit caselaw to cite to establish vicarious liability on Allstate for the
actions of an independent contractor agent who sent faxes without Allstate's knowledge and contrary
to Allstate's written policy prohibiting junk faxes. (*Id*.).  In short, the result achieved in this case is
certainly on par with *Hageman* and under much more difficult circumstances.

### D.  Class Counsel Experienced Numerous Burdens Litigating the Case

The extraordinary recovery achieved here did not come easily. Class Counsel obtained it
through a year of hard-fought litigation against highly skilled adversaries. The docket is filled with
numerous motions and associated legal briefs. Because this is a contingency case, Class Counsel
bore the entire cost of this matter for a protracted period. Class attorneys and their firms expended
over 1,356 hours (Kelly Decl. ¶ 36; Declaration of Willem F. Jonckheer ("Jonckheer Decl.") ¶ 6),
which "necessarily require[d] Class Counsel to eschew other work in order to devote their energies
to this case, which was intensely opposed and fervently litigated." *Aguilar v. Wawona Frozen Foods*,
No. 15-cv-0093-DAD-EPG, 2017 WL 2214936, at *5 (E.D. Cal. May 19, 2017).

In sum, Class Counsel took or defended 16 depositions in five different states, as follows:
Louis Odiase (September 27, 2017, in San Francisco, California); Barry Clark (July 25, 2017, in
Denver, Colorado); Christine DeMilio (October 20, 2017, in Northbrook, Illinois); John Etter
(September 29, 2017, in San Francisco, California); Sonya Kwon (November 30, 2018, in Irvine,
California); Louis Odiase, Jr. (January 22, 2018, in San Jose, California); Shelly Etter (January 23,
2018, in Monterey, California); Nicole Mercado (January 23, 2018, in Monterey, California); Obie
Scott (March 7, 2018, in Sacramento, California); Ed Dimick (March 7, 2018, in Sacramento,
California); Todd Chockley (March 13, 2018, in Rolling Meadows, Illinois); Richard Rafford

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, EXPENSES, SERVICE AWARD

(March 13, 2018, in Rolling Meadows, Illinois); Renee Drinkard (February 15, 2018 – appeared telephonically); Brenda Snyder (March 13, 2018, in Papillion, Nebraska); Robert Biggerstaff (November 14, 2017, and April 13, 2018, both in Mount Pleasant, South Carolina); and Jacqueline Odiase (January 25, 2018, in Walnut Creek, California). (Kelly Decl., ¶ 31).

Class Counsel also reviewed over 4,000 documents and over 15,000 recorded telephone calls, answered ten sets of written discovery, briefed and successfully argued a motion for class certification, participated in two mediations, briefed summary judgment, and negotiated the class settlement agreement. (Kelly Decl., ¶¶ 14-18, 20-23, 30). Besides the foregoing, Class Counsel through its expert witness Robert Biggerstaff was able to generate an expert report ("Biggerstaff Report") on an expedited basis (necessitated by the late production of documents by Defendant Odiase) in order to support its successful motion for class certification. (Kelly Decl., ¶ 32).

In particular, Class Counsel obtained "exception reports" for the October 11, 2016, Fax broadcast from Defendant Odiase in a supplemental production on October 27, 2017, the day Plaintiff's Motion for Class Certification was due.  (Id.).  By November 7, 2017, Class Counsel served Defendants with the Biggerstaff Report, wherein Biggerstaff applied the exception report to the fax list and concluded that 17,432 transmissions of the October 11, 2016, fax were sent to 15,286 unique fax numbers. (Id.)

On November 17, 2017, the day Defendants filed their oppositions to Plaintiff's Motion for Class Certification, Allstate served Plaintiff with the Expert Report of Sonya Kwon ("Kwon Report"), responding to the Biggerstaff Report. (Kelly Decl., ¶ 33).  Class Counsel deposed Ms. Kwon on November 30, 2018, and on the next day, December 1, 2017, filed its Reply Memorandum in Support of Class Certification along with a rebuttal report from Biggerstaff in response to matters raised by Ms. Kwon in her report. (Id.) This Court ultimately certified Class B (the October 11, 2016, Fax), stating in part that Biggerstaff's analysis of the fax lists and exception reports "may well be a reliable method of identifying individual class members in the absence of detailed fax logs." (Order Re Class Certification, Doc. 73 at 10; Kelly Decl., Ex. 2, at 10).

-12-                                      Case No. 17-CV-00184-WHA

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, EXPENSES, SERVICE AWARD

After an unsuccessful first mediation on February 6, 2018, both Parties timely filed motions for summary judgment on March 19, 2018, oppositions thereto on April 12, 2018, and replies in support on April 19, 2018. (Kelly Decl., ¶¶ 20-22).  Subsequently, in the second mediation before the Honorable Magistrate Judge Jacqueline Scott Corley, the case settled (*Id.,* ¶ 23).

The foregoing is emblematic of the robust effort put forth by Class Counsel, Mr. Etter as class representative, and Plaintiff's expert, and also underscores the equally robust effort put forth by the high caliber defense firms representing Defendants along with their expert witness, Ms. Kwon. Class Counsel's efforts against highly motivated and skilled adversaries support the requested fee. *Aguilar*, 2017 WL 2214936 at *5; *see Cohorst v. BRE Props., Inc.*, No. 3:10-cv-2666-JM-BGS, 2011 WL 7061923, at *20 (S.D. Cal. Nov. 14, 2011), report and recommendation adopted as modified, No. 10CV2666 JM BGS, 2012 WL 153754 (S.D. Cal. Jan. 18, 2012) (citing *In re Equity Funding Corp. of Am. Secs. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977)).

### E.  Class Counsel Took the Case on Contingency

Class Counsel pursued this case on behalf of the class on a purely contingent basis. (Kelly Decl., ¶¶ 12, 29). Class counsel's willingness to proceed under these circumstances—even though its prior case against McKesson in this district had initially failed—also supports the requested award. *Taylor*, 2016 WL 6038949, at *6.  In addition, the expenses incurred by Class Counsel of $144,498.00, is a large outlay of money based on the contingency aspect of the litigation and is three times that of a TCPA class case that we have experienced (due to the extensive travel required for out of state depositions and court appearances).

### F.  Class Counsel's Skill and Experience Support the Requested Award

The experience and skill of Class Counsel in this area also supports the requested fee. Courts consider the record of requesting counsel in awarding fees. *See, e.g., Emmons v. Quest Diagnostic Clinical Laboratories, Inc.*, 2017 WL 749018, at *7 (E.D. Cal. Feb. 27, 2017). The entire team here includes class-action attorneys with extensive experience in complex litigation. The attorneys at each firm have over 75 years of experience. Anderson + Wanca alone has successfully prosecuted over

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, EXPENSES, SERVICE AWARD

150 class cases nationwide, including TCPA/junk fax actions, and the Schubert firm has litigated many complex actions in this district and throughout the country. (Kelly Decl., ¶ 27; Jonckheer Decl., ¶ 4). As the Court noted in certifying the class, Class Counsel include "experienced TCPA litigators." (Order Re Class Certification, Doc. 73, at 6; Kelly Decl., Ex. 2, at 6).

## G.  The Issues Were Complex

This was far from a straightforward "run-of-the-mill" TCPA case. Class Counsel confronted a host of complex issues that are not typically present in an ordinary TCPA lawsuit, any one of which could have sunk the class's prospects for recovery.

Among these were (1) the vicarious liability issues regarding Odiase's independent contractor relationship with Allstate; (2) the written policy of Allstate prohibiting junk faxes; (3) attempting to establish liability against Allstate Defendants when the Allstate Defendants were not aware of Odiase's fax broadcasting; (4) the insurance coverage issues presented with no reported California decision finding coverage for TCPA cases; and (5) the extent to which Defendant Odiase could fund a potential class-wide judgment.

The complex and unique issues presented in this case support the requested award. *See Pacific Enterprises*, 47 F.3d at 379 (upholding one third award principally "because of the complexity of the issues and the risks"); *Lopez v. Youngblood*, No. 07-cv-0474 DLB, 2011 WL 10483569, at *5, 12 (E.D. Cal. Sept. 2, 2011); *Keller v. Elec. Arts, Inc.*, No. 4:09-cv-1967 CW, 2015 WL 5005057, at *3 (N.D. Cal. Aug. 18, 2015).

## H.  No Class Member Has Objected to Date.

The class's reaction to settlement has been uniformly positive and supportive of the requested fees. *See Fischel*, 307 F.3d at 1007-08 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)). On March 13-14, 2018, notice of pendency was sent to the 15,286 class members via facsimile and U.S. Mail and only ten class members opted to exclude themselves. (Kelly Decl. ¶ 19). The class notices informed members that Class Counsel would seek fees in an

amount up to thirty percent (30%) of the total recovery and that fees would be paid from the settlement fund. (*Id.* ¶ 26) The notice informed members that they could object to the settlement, including the requested fees, and how to make objections. (*Id.*) To date, no class members have objected to the settlement or the fees.[4] (*Id.*). And, as stated, only ten members opted out, a tiny fraction of a 15,286-member class. (*Id.*). This weighs strongly in favor of the requested fee.

## I.   A Lodestar Cross-Check Supports the Requested Fees

Although courts often cross check the presumptive percentage fee with a lodestar analysis, the Court is not required to perform a cross-check. *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *7 (E.D. Cal. Sept. 11, 2008); *Lopez*, 2011 WL 10483569, at *14. If the Court finds the fee reasonable as a percentage of the recovery, it may stop there. We recognize, however, the Court's practice to cross-check the requested fee against the class attorneys' lodestar, so we have provided the necessary data.

The purpose of a lodestar cross-check is to identify potential windfall fees, *i.e.*, to "ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple." *In re Cendant Corp. Secs. Litig.*, 404 F.3d 173, 188 (3d Cir. 2005). In performing a lodestar calculation, a court examines "(1) counsel's reasonable hours, (2) counsel's reasonable hourly rate, and (3) a multiplier thought to compensate for various factors . . . ." *Young v. Polo Retail, LLC*, No. C 02 4546 VRW, 2007 WL 951821, at *6 (N.D. Cal. Mar. 28, 2007). But because "the lodestar cross-check calculation need entail neither mathematical precision nor bean counting," *Aguilar*, 2017 WL 2214936, at *6 (quoting *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015)), a court may "rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Sec. Litig.*, 396 F.3d 294, 306-307 (3d Cir. 2005); *see,*

---

[4]     Under the Court's preliminary approval order, class members have until August 16, 2018 by which to object to final settlement approval or the motion for reimbursement of attorneys' fees and costs. (*See* Doc. No. 138)

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, EXPENSES, SERVICE AWARD

*e.g., Aguilar*, 2017 WL 2214936, at *6 (relying on time summaries provided by class attorneys).

Here, the lodestar calculation strongly supports the requested fees.

### 1. The base lodestar

The base lodestar is $783,151.10 as shown in table 1.

**TABLE 1 – Loadstar Summary**

| Professional | Rate | Hours | Lodestar |
|---|---|---|---|
|  |  |  |  |
| Attorneys | $600 - $950 | 1,179.67 | $748,630.10 |
| Paralegals | $195 - $200 | 177.00 | $ 34,521.00 |
|  |  |  |  |
| **Total** |  | 1,356.67 | **$783,151.10** [5] |

### 2. The hours expended by Class Counsel are reasonable

Under the lodestar method, Class Counsel are compensated for "all hours reasonably spent on the matter." *Charlebois*, 993 F. Supp. 2d at 1115. Class Counsel devoted substantial hours to developing and prosecuting the case. Altogether, 1,356 hours have been dedicated to this case. (Kelly Decl. ¶ 36) (1,069.75 A&W attorney hours, 175.7 paralegal hours); Jonckheer Decl. ¶ 6 (109.92 SJK attorney hours 1.3 paralegal hours). As detailed above, Class Counsel aggressively pursued discovery over vigorous defense objections; answered ten (10) sets of written discovery; participated in numerous informal discovery conferences; issued three out of district subpoenas; reviewed thousands of documents produced by Defendants and third parties; took and defended 16 depositions nationwide; attended two mediations; reviewed and analyzed eight (8) electronic databases; produced an expedited expert report and a rebuttal report through their expert Robert Biggerstaff; briefed and argued a motion for class certification; briefed cross motions for summary judgment, began preparing trial materials;

---

[5]     These rates represent the class attorneys' current hourly charges. "This is appropriate because, for the fee award to be reasonable, it must be based on current, rather than historic, hourly rates." *Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1119 n.6 (C.D. Cal. 2012). "Hours" are those worked through July 25, 2018

drafted and negotiated a class settlement agreement; moved for and obtained preliminary approval; and participated in the settlement administration process. (*See* Kelly Decl. ¶¶ 14-24, 30-33) All work was performed by a core group of experienced TCPA attorneys.

### 3. Class counsel's standard rates are reasonable

In determining the appropriate rate for the lodestar computation, the court "should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). This is typically the forum in which the district court sits. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). A court should still be mindful of the rates awarded in other judicial districts in California. *Adoma v. University of Phoenix, Inc.*, 913 F. Supp. 2d 964, 984 (E.D. Cal. 2012). Evidence of market rates may be established through declarations of counsel and rate determinations in other cases. *See Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir. 1991).

The hourly rates used to calculate the base lodestar are those customarily charged by class counsel in standard billable matters of similar complexity. (Kelly Decl. ¶ ___; Jonckheer Decl. ¶ ___) They are all within the range of rates approved by other courts within this circuit. *Barbosa*, 297 F.R.D. at 452 (awarding between $280 and $560/hr. for attorneys with two to eight years of experience, and $720/hr. for attorney with 21 years of experience); *Gong-Chun v. Aetna, Inc.*, No. 1:09-cv-01995-SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012). These rates satisfy the relevant market test of reasonableness.

### 4. A multiplier is easily supported in this case

When the lodestar method is used as a cross check, "the multiplier is implied by the ratio of the proposed percentage fee to the computed lodestar fee," and this multiplier is assessed for reasonableness. *Young*, 2007 WL 951821, at *6. A multiplier is used to adjust the base lodestar to reflect a number of factors. Among these are the degree of success and the risks incurred. *Fischel*, 307 F.3d at 1007 n.7. The inherent risk of contingency work is a critical factor. The Ninth Circuit stresses that "[i]t is an abuse of discretion to fail to apply a risk multiplier . . . when (1) attorneys take a case with the expectation that they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence that the case was risky." *Id.* at 1008.

Applying the formula here, the $1,959,975.00 requested fee, divided by the $783,151.10 lodestar, produces an "implied multiplier" of 2.5. This does not approach the "extraordinary lodestar multiple" the cross-check is designed to unearth. *See Cendant*, 404 F.3d at 188. If anything, the results and overall risk of this case would support a greater multiplier. Class Counsel succeeded in obtaining a favorable recovery for the class, no less the equal of the *Vandervort* settlement regarded as "exceptional." (*See* pp. 9-10, *supra*.) That Class Counsel's focus was turned away from cases involving less risk of non-payment further supports the multiplier. *See Fischel*, 307 F.3d at 1007 n.7; *Aguilar*, 2017 WL 2214936, at *5; *Hofstetter v. Chase Home Fin., LLC*, No. C 10-01313 WHA, 2011 WL 5545912, at *2 (N.D. Cal. Nov. 14, 2011) (awarding fees equivalent to two times the lodestar in force-placed insurance class settlement where plaintiff's counsels' performance was "above average").

A 2.5 multiplier is in line with similar cases and well within the range of reasonableness. Courts have found that "[m]ultipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation." *Aguilar*, 2017 WL 2214936, at *5 (citing *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995)); *Taylor*, 2016 WL 6038949, at *7 (approving 2.26 multiplier). The Ninth Circuit has approved a "reasonable" multiplier of 3.64. *See Vizcaino*, 290 F.3d at 1047-1051. Even when courts examine class counsel's "lodestar," courts frequently award multipliers between one and four, with an average near the top of that range. *In re Oral Sodium Phosphate Solution-Based Prods. Liab.* Action, No. MDL 2066, 2010 WL 5058454, at *4 n.28 (N.D. Ohio 2010) (court examined 1,120 class settlements nationwide and found "the courts' effective multipliers averaged 3.89 across all 1,120 cases."). The lodestar cross-check fully supports the requested percentage fee.

In sum, regardless whether the Court analyzes the fee request as 30% of the $6.5 million common fund or a lodestar multiplier of 2.5, Class Counsels' request for $1,959,975 in fees is reasonable and justified in light of the exceptional results in this case, and the Court should grant this Motion.

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, EXPENSES, SERVICE AWARD

### III.   Class Counsels' Expenses Are Reasonable

Class Counsel also request reimbursement for the reasonable costs that were necessary to achieve the settlement's package of class benefits. Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are eligible for reimbursement. *In re Media Vision Tech. Secs. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995). "The standard of reasonableness [of costs] is to be given a liberal interpretation." *Id.* at 1368. In fact, "[w]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of the litigation, or as an aspect of settlement of the case, may be taxed." *Id.* The expense detail is set forth in the accompanying Kelly Declaration, ¶ 35 and Jonckheer Declaration, ¶ 9.

The expenses total about 2.2% of the class's recovery, well below the 4% average in class cases. *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp 2d 1028, 1041 (N.D. Ill. 2011) (citing Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. Empirical Legal Stud. 27, 70 (2004)). The overall expenses are extremely reasonable for a case of this magnitude and duration.

### IV.   Plaintiff is Entitled to an Incentive Award.

Plaintiff Etter should be compensated for his efforts that produced a successful result for the class.  The granting of a Service Award (or "incentive award") will compensate Etter and promote the larger interest of ensuring that active and diligent class representatives are at the head of class actions.

Courts have long recognized that class representatives should be compensated for their services to the class.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000); *West v. Circle K Stores, Inc.,* No. Civ. S-04-0438 WBS GGH, 2006 U.S. Dist. LEXIS 76558, at *26 (E.D. Cal. Oct. 19, 2006).  Such compensation provides the economic motivation to induce potential plaintiffs to lend their names and support to class actions generally.  *West*, 2006 U.S. Dist. LEXIS 76558, at *26.  And the same incentive fees further ensure that meritorious actions are prosecuted to completion.  *Linney v. Cellular Alaska Part.*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, at *23 (N.D. Cal. July 18, 1997).  A court should order an incentive award when it finds that it is not

the product of collusion and does not come at the expense of the remaining members of the class. *Louie v. Kaiser Fund Health Plan, Inc.*, No. 08cv0795 IEG RBB, 2008 U.S. Dist. LEXIS 78314, at *17-18 (S.D. Cal. Oct. 6, 2008).

"Incentive awards are fairly typical in class action cases." *Rodriquez v. West Publ'g Corp.*, 563 F.3d 94, 958 (9th Cir. 2009) (citing 4 William B. Rubenstein, Newberg on Class Actions § 11:38 (4th ed. 2008); Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 U.C.L.A.L. Rev. 1303 (2006) (finding twenty-eight percent of settled class actions between 1993 and 2002 included an incentive award to class representatives)). "Such awards are discretionary, and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id* at 958-59.

Etter's service exemplifies the reasons for approving an incentive award. Etter and his employees devoted a substantial amount of time preparing the matter for litigation, responding to discovery and overseeing major case activities, including settlement negotiations. (Etter Decl., ¶¶ 3-10). Etter's efforts have both advanced the class's interests, and afforded it a substantial benefit, as reflected in Defendants' $6,533,250.00 non-reversionary settlement payment.

The action set out to stop unwanted faxing and recover statutory damages available under the TCPA. The litigation accomplished both purposes. As a direct result of the lawsuit, Odiase stopped his fax-advertising program. Under the proposed settlement, Defendants will establish a $6,533,250.00 settlement fund to compensate eligible class members pro rata based on the number of faxes received. The gross recovery per fax will be $375, and even after deducting attorneys' fees expenses, and incentive award, class members can expect to receive about $254 per fax. The requested incentive award constitutes less than $0.50 from each class member's recovery.

In addition to compensating Etter for his efforts and results, approving the requested award will also encourage potential class representatives to bring class claims and to diligently prosecute them. Etter initiated this matter with the best intentions, and his consistent service and vigilance entitles him to a modest $7,500 incentive award. As stated, he and his employees devoted numerous hours in support of all aspects of the litigation including the initial investigation, written discovery, three depositions he and his employees attended, and attendance at the first mediation.

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, EXPENSES, SERVICE AWARD

In determining the size of an incentive award, courts broadly consider "the degree to which the class has benefited from those actions…[and] the amount of time and effort the plaintiff expended in pursuing the litigation…[citations omitted]." *Louie*, 2008 U.S. Dist. LEXIS 78314, at *18. Courts also consider the duration of the litigation and the personal benefit or lack thereof enjoyed by the class representative as a result of the litigation. *Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal. 1995). All of these factors support the requested award.

In fact, in a class action in this Circuit involving a smaller award ($5 million), two class representatives were each awarded $15,000.00 from a common fund for their services. *West*, 2006 U.S. Dist. LEXIS 76558, at *27. The requested award here is modest in comparison to *West.* Indeed, other class representatives have received even more significant awards for putting forth less effort than Etter. *E.g., Louie*, 2008 U.S. Dist. LEXIS 78314, at *18 ($25,000.00 incentive award). The class notice of settlement informed class members that Etter would seek an award in this amount. No member of the class has objected to the fact or amount of the proposed award.

Courts in the Ninth Circuit have awarded class representatives as much as $15,000.00. *See Craftwood II,* Doc. 141 at 7, ¶ 18 (*see* Kelly Decl., Ex. 7); $10,000.00, *see Daniel Joseph*, Doc. 131, at 6, ¶ 15(*see* Kelly Decl., Ex. 6); $15,000.00, *Dakota Medical, Inc. v. Rehabcare Group, Inc.,* 2017 WL 4180497 (E.D. Cal. Sept. 21, 2017); *Gibson & Company Insurance Brokers Inc. v. QFA Royalties LLC*, 06-cv-05849-PSG-PLA, Doc. 212 (C.D. Cal. 2009) ($15,000 to named plaintiff for service payment in TCPA class settlement); *Pelletz v. Weyerhaeuser Co.,* 592 F. Supp. 2d 1322, 1329-30 & n.9 (W.D. Wash. 2009) (approving $7,500 where class plaintiff assisted Class Counsel, responded to discovery and reviewed settlement terms); *Odrick v. UnionBanCal Corp.,* 2012 U.S. Dist. LEXIS 171413, at *11, 18 (N.D. Cal. Dec. 3, 2012) (awarding $5,000 to named plaintiff where "the settlement was reached early in litigation").

## CONCLUSION

For the reasons set forth herein**,** Plaintiff's motion should be granted.

DATED: July 26, 2018                                 By: s/ Ryan M. Kelly

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRIAN J. WANCA *(pro hac admitted)*
RYAN M. KELLY *(pro hac admitted)*
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847-368-1500
Fax: 847-368-1501
bwanca@andersonwanca.com
rkelly@andersonwanca.com
*Lead Class Counsel*

ROBERT C. SCHUBERT
WILLEM F. JONCKHEER
SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 788-4220
Facsimile:  (415) 788-0161
rschubert@schubertlawfirm.com
wjonckheer@schubertlawfirm.com
*Class Counsel*

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, EXPENSES, SERVICE AWARD