SCHUBERT JONCKHEER & KOLBE LLP
ROBERT C. SCHUBERT (62684)
WILLEM F. JONCKHEER (178748)
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone:  (415) 788-4220
Email: rschubert@schubertlawfirm.com
Email: wjonckheer@schubertlawfirm.com
*Class Counsel*

ANDERSON & WANCA
BRIAN J. WANCA *(pro hac vice)*
RYAN M. KELLY *(pro hac vice)*
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone:  (847) 368-1500
Email: bwanca@andersonwanca.com
Email: rkelley@andersonwanca.com
*Lead Class Counsel*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN C. ETTER, individually and as the representative of a class of similarly-situated persons,<br><br>        Plaintiff,<br><br>    v.<br><br>ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, ALLSTATE NORTH BROOK INDEMNITY COMPANY, ALLSTATE INSURANCE COMPANY OF CALIFORNIA, LOUIS ODIASE and JOHN DOES 1-5,<br><br>        Defendants. | Case No. 17-CV-00184-WHA<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hon. William Alsup<br><br>Motion Hearing Date:  October 25, 2018<br>Motion Hearing Time:  12:00 p.m.<br>Courtroom 12 -  19th Floor |

**NOTICE OF MOTION**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

On October 25, 2018, at 12:00 p.m., in Courtroom 12 – 19th Floor of the Honorable William Alsup, Appointed Class Representative/Plaintiff, John C. Etter ("Etter"), will and does hereby move the Court, for the entry of the following order:

Etter moves the Court for final approval of the settlement contained in the "Settlement Agreement" entered into by the parties (previously lodged with the Court in connection with Etter's Motion for Preliminary Approval of Class Action Settlement (Doc. 131) (with fully executed copy being ECF filed as Doc. 134).

Etter makes his Motion on the following grounds:

1.     The settlement proposed in the Settlement Agreement was negotiated at arm's-length, is not collusive, and is fair, reasonable, adequate, and in the best interests of the Certified Class;

2.     Notices to the Certified Class and method of disseminating the same to the Certified Class provided the best notice practicable under the circumstances and complied with Fed. R. Civ. P. 23(e) and due process;

3.     This Court previously certified the Class and a notice of pendency was sent.  Ten (10) class members who received ten (10) faxes opted out;

4.     This settlement provides $375.00 to each class member of a certified class, net of an award of attorneys' fees and reimbursement of expenses to Class Counsel, an incentive award to Plaintiff, and settlement administration costs.  There is no claim form and the Settlement Fund is non-reversionary.

The Motion is based on the accompanying Memorandum in Support of the Motion; the Declarations and Exhibits filed concurrently herewith; the Settlement Agreement previously lodged with the Court; the previously filed Motion for Preliminary Approval of Class Action Settlement, including the Declaration and Exhibits submitted in connection with that Motion, the pleadings and

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

papers filed in this case; and on such further briefs and argument of counsel that will be received before or during the hearing on the Motion.

The Motion is unopposed by Defendants.


## STATEMENT OF ISSUES PRESENTED

1.     Is the proposed Settlement Agreement fair, adequate, and reasonable under the final approval factors outlined in *Churchill Village, LLC v. Gen. Elec.,* 361 F.3d 566 (9th Cir. 2004)?

2.     Did the Court-approved notice plan satisfy the requirements of Federal Rule of Civil Procedure 23(e)(1) and due process?

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................1

THE PROPOSED CLASS SETTLEMENT .................................................................2

THE SETTLEMENT NOTICE ...................................................................................3

The Proposed Settlement Merits Should Receive Final Approval .............................3

    A. The Strength of Plaintiff's Case ..................................................................5

    B. The Risk, Expense, Complexity and Likely Duration of Further Litigation ...............7

    C. The Risk of Maintaining Class Status .........................................................8

    D. The Amount Offered in Settlement .............................................................9

    E. The Extent of Discovery Completed and the Stage of the Proceedings .....................10

    F. Experienced Class Counsel Favor Approval .............................................11

    G. The Highly Favorable Class Reaction to the Proposed Settlement ...........................11

CONCLUSION ..........................................................................................................12

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

1

# TABLE OF AUTHORITIES

Page

2

**Cases**

3

*Aguilar v. Wawona Frozen Foods,*
   No. 1:15-cv-00093-DAD-EPG (E.D. Cal. May 19, 2017) ...................................4–5, 7, 11

4

5

*Arthur v. Sallie Mae, Inc.,*
   2:10-cv-00198 (W.D. Wash. Oct. 11, 2011) ...................................................................10

6

7

*Bais Yaakov of Spring Valley v. FCC,*
   852 F.3d 1078, 1083 (D.C. Cir. 2017) ............................................................................9

8

9

*Bayat v. Bank of the West,*
   2015 U.S. Dist. LEXIS 50416 (N.D. Cal. Apr. 15, 2015)....................................................7

10

11

*Bellinghausen v. Tractor Supply Co.,*
   306 F.R.D. 245 (2015) ......................................................................................................9

12

*Castillo v. ADT, LLC,*
   No. 2:15-383 WBS DB, 2017 WL 363108 (E.D. Cal. Jan. 25, 2017) ...........................4, 9

13

14

*Churchill Village, L.L.C. v. General Elec.,*
   361 F.3d 566 (9th Cir. 2004) .........................................................................................4, 7

15

16

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1985) ......................................................................................11

17

*Emmons v. Quest Diagnostics Clinical Labs., Inc.,*
   No. 1:13-cv-00474-DAD-BAM, 2017 WL 749018 (E.D.C.A. Feb. 27, 2017) ..............5, 8

18

19

*Garner v. State Farm Mut. Auto. Ins. Co.,*
   2010 U.S. Dist. LEXIS 49477 (N.D. Cal. Apr. 22, 2010)..................................................5

20

21

*Gene and Gene, LLC v. BioPay, LLC,*
   541 F.3d 318 (5th Cir. 2008) . .........................................................................................8

22

23

*G.F. v. Contra Costa Cnty.,*
   2015 U.S. Dist. LEXIS 100512 (N.D. Cal. July 30, 2015).................................................11

24

25

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) .........................................................................................4

26

*Health One Med. Ctr., Eastpointe PLLC v. Mohawk, Inc.,*
   --- F.3d ---, 2018 WL 2123336 (6th Cir. May 9, 2018) ..................................................6

27

*Helping Hand Caregivers, Ltd. v. Darden Restaurants, Inc.,*
   900 F.3d 884 (7th Cir., Aug. 14, 2018) ..........................................................................7

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

1

## TABLE OF AUTHORITIES (Con't.)

2

Page

**Cases**

*Imhoff Inv., LLC v. Alfoccino, Inc.*,
    792 F.3d 627 (6th Cir. 2015) ........................................................6

*In re Google Referrer Header Privacy Litig.*,
    87 F. Supp. 3d 1122 (2015) ..........................................................8

*In re LinkedIn User Privacy Litig.*,
    309 F.R.D. 573 (2015) .................................................................9

*In re Optical Disk Drive Prods. Antitrust Litig.*,
    2016 U.S. Dist. LEXIS 175515 (N.D. Cal. Dec. 19, 2016).................4

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ......................................................4

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit
    Transactions Act (FACTA) Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014).................................................11

*In re Wash. Pub. Power Supply Sys. Secs. Litig.*,
    720 F. Supp. 1379 (D. Ariz. 1989) ...............................................5

*In re:Checking Account Overdraft Litig.*,
    No. 1:09-MD-02036-JLK, 2013 WL 11319244 (S.D. Fla. Aug. 2, 2013) .......................10

*Ira Holtzman, CPA, & Assocs., Ltd. v. Turza*,
    728 F.3d 682 (7th Cir. 2013) ......................................................8

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ......................................................4

*Meyer v. Capital All. Grp.*,
    No. 15-CV-2405-WVG, 2017 WL 5138316 (S.D. Cal. Nov. 6, 2017) ...........................7

*Mitchinson v. Love's Travel Stops & Country Stores, Inc.*,
    No. 1:15-cv-01474-DAD-BAM, 2017 WL 2289342 (E.D.C.A. May 25, 2017) ...........4, 7

*Nachshin v. AOL, LLC*,
    663 F.3d 1034 (9th Cir. 2011) ....................................................3

*National Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................12

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ......................................................4

## TABLE OF AUTHORITIES (Con't.)

Page

**Cases**

*Paldo Sign & Display Co. v. Wagener Equities, Inc.*,
 825 F.3d 793 (7th Cir. 2016) ............................................6

*Palmer v. Sprint,*
 No. 09-cv-01211 (W.D. Wash. April 26, 2011) ...............10

*Pimental v. Google, Inc.,*
 No. 4:11-cv-02585 (N.D. Cal. Oct. 5, 2012) ...................10

*Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.,*
 No. 1:09-cv-00776 (N.D. Ill. Jan. 7, 2011) .....................10

*Sandusky Wellness Ctr. v. ASD Specialty Healthcare, Inc.,*
 No. 16-3741, __F.3d___, 2017 WL 2953039 (6th Cir. July 11, 2017) .........................9

*Satterfield v. Simon & Schuster, Inc.,*
 No. 4:06-cv-02893 (N.D. Cal. February 17, 2010) .........10

*Taylor v. FedEx Freight, Inc.,*
 No. 1:13-cv-01137-DAD-BAM, 2016 WL 6038949 (E.D. Cal.
 Oct. 13, 2016) ...........................................4, 10, 12

*Valentino v. Carter-Wallace, Inc.,*
 97 F.3d 1227 (9th Cir. 1996) ..........................................8

*Vandervort v. Balboa Capital Corp.,*
 287 F.R.D. 554 (C.D. Cal. 2012) ...................................9

*Vandervort v. Balboa Capital Corp.,*
 SACV 11-1578-JLS (C.D. Cal. Jan. 20, 2014) ...............10

**Statutes**

47 C.F.R. § 64.1200(f)(10) ............................................5–6
47 U.S.C. § 227 ...............................................................8
47 U.S.C. § 227(b)(1)(C) ................................................1

**Other Authorities**

Brian T. Fitzpatrick & Robert C. Gilbert, *An Empirical Look at Compensation in
 Consumer Class Actions*, 11 N.Y.U. J.L. & Bus. 767, 770 (2015) ...................10

**Rules & Regulations**

Fed. R. Civ. P. 23 .............................................................8

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

1

**TABLE OF AUTHORITIES (Con't.)**

Page

2

**Rules & Regulations**

3
Fed. R. Civ. P. 23(b)(3) ...................................................................................................8
Fed. R. Civ. P. 23(e) .......................................................................................................1

4
Fed. R. Civ. P. 23(e)(2) ...................................................................................................4

5
*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of
1991*, CG Docket Nos. 02-278, 05-338, FCC 14-164, Order, ¶ 27 n.99 (Oct.

6
30, 2014) ....................................................................................................................9

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

### Introduction

This class action is brought by Plaintiff John C. Etter ("Plaintiff") against Defendants Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, Allstate Northbrook Indemnity Company, Allstate Insurance Company of California (collectively, "Allstate") and Louis Odiase ("Odiase," and collectively with Allstate, "Defendants") alleging violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227(b)(1)(C) ("TCPA"). On December 26, 2017, the Court certified a Class of recipients of junk faxes sent by Defendants. (Doc. No. 73.) A notice of pendency was disseminated to the Class.  (Doc. No. 104.) After the parties reached a settlement at a second settlement conference before Magistrate Judge Jacqueline Scott Corley, Plaintiff moved for preliminary approval of the settlement.

This Court granted preliminarily approval of the settlement on May 30, 2018. (Doc. No. 136.) The Court subsequently approved the notice of settlement for distribution to the Class, and scheduled dates for motions in support of the settlement by order dated June 11, 2018. (Doc. No. 138.) The response to the settlement has been overwhelmingly positive. Over 96% percent of the Class received notices of the settlement approved by this Court in English and Spanish, and have been able to access the settlement website, with links to key case documents.  No Class members have objected.

Plaintiff now moves the Court for final approval of the settlement. The proposed class settlement meets and exceeds Rule 23(e)'s standard of fundamental fairness, adequacy, and reasonableness. The settlement will compensate 15,276 California residents and small businesses for the junk faxes they received from Defendants. The settlement avoids further litigation that would expose the Class to numerous legal and practical risks. Defendant Odiase's errors and omissions insurance carrier paid its $1 million policy limits as part of the settlement. The other Allstate Defendants steadfastly denied responsibility for Odiase's fax-blast activities, but are paying an additional $5,533,250.00 to resolve this case.

The settlement was achieved only after months of hard-fought litigation against formidable defense teams, two separate mediations, and extensive negotiations over the final settlement terms. It apportions all settlement proceeds equitably among the entire Class based on the number of fax ads

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL**

each Class member received, paying $375 per fax, net of attorneys' fees and litigation expenses, as discussed below. The absence of objections the settlement reflects the settlement's tangible benefits for Class members. The settlement merits final approval.

## The Proposed Class Settlement

The Court recently considered the proposed Class Action Settlement Agreement and granted Plaintiff's motion for preliminary approval. By this Court's order of December 26, 2017 (Doc. No. 73), the certified Class is defined as follows:

> All persons or entities successfully sent a facsimile on or about October 11, 2016, stating, "potentially save **40-60%** off your Commercial auto insurance," "fill out and fax form below" and "FAX YOUR REQUEST TO: 510-234-0518, TEL 510-234-0516, OR EMAIL: A026315@ALLSTATE.COM," and "If you wish to be removed from our Fax list, please call 888-828-3086"

If finally approved, the settlement will establish a non-reversionary $6,533,250.00 common fund for recipients of Defendants' faxes on or about October 11, 2016. On a gross basis, before expenses and fees, the settlement pays $375 per fax, per Class member. Costs of notice and settlement administration, attorneys' fees and expenses, and any incentive award to Plaintiff will be paid directly from the fund. After projected notice and settlement administration expenses, and assuming attorneys' fees and expenses and an incentive award are granted in the requested amounts, approximately $4,421,277.00, or an average of $254 per fax, per Class member, will be distributed.

All net settlement proceeds will be distributed automatically to Class members at addresses compiled from Defendants' record, and further updated by the settlement administrator, without the need for Class members to submit claims. If net settlement funds remain after the initial distribution, they will be redistributed in accordance with section 3.07 of the Restatement of the Law of Aggregate Litigation.[1] This means there would be an additional distribution to all participating Class members,

---

[1] Section 3.07(b) states that "[i]f the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair." The Restatement provides that if a redistribution cannot be made under these criteria,

-2-                                                    Case No. 17-CV-00184-WHA

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

if economically viable. (*Id.*) Only if a further distribution to the class is not economically viable, Plaintiff has proposed a *cy pres* recipient whose interests most closely approximate those of the class. (Id.) *See Nachshin v. AOL, LLC,* 663 F.3d 1034, 1040 (9th Cir. 2011). Defendants have asked the court to appoint another *cy pres* recipient.

Class members will grant a limited release to Defendants and their affiliated parties. (Doc. No. 131, p. 9–10.) The release is narrowly tailored to claims concerning the specific fax in this case— only the fax sent on October 11, 2016.

Settlement was achieved only after months of heavily-contested litigation against two highly-skilled legal defense teams, punctuated with numerous discovery battles, a contested class certification hearing, 16 depositions, fully briefed cross motions for summary judgment, two intense mediations, and detailed negotiations over the terms of the Class Action Settlement Agreement. At the time settlement in principle was reached, cross motions for summary judgment were pending and trial was imminent. The settlement removes the risks associated with these and other defense challenges and provides substantial, certain recovery to Class members.

### The Settlement Notice

On July 2, 2018, the Settlement Administrator sent notice by fax and mail. (Merryman Decl. ¶¶ 10, 14) The administrator successfully transmitted the notice to some 96% of Class members by mail and 90% by fax. (*Id.*, ¶¶ 11, 16)  For the mail notices that were returned, the administrator re-mailed to new addresses that had been located through additional searches. (*Id.*, ¶ 15)

The Settlement Administrator also set up a website and posted settlement documents as well as the Plaintiff's Motion for Attorneys' Fees and Reimbursement of Reasonable Expense and Service Award. No Class member has objected to the settlement, the expenses, or fees requested.

### The Proposed Settlement Merits Should Receive Final Approval

---

remaining funds should be distributed to a *cy pres* recipient "whose interests reasonably approximate those being pursued by the class." § 3.07(c).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

1   "At the final approval stage, the primary inquiry is whether the proposed settlement 'is

2   fundamentally fair, adequate and reasonable.'" *Taylor v. FedEx Freight, Inc.,* No. 1:13-cv-01137-

3   DAD-BAM, 2016 WL 6038949, at *2 (E.D. Cal. Oct. 13, 2016) (Drozd, J.) (quoting *Lane v.*

4   *Facebook, Inc.,* 696 F.3d 811, 818 (9th Cir. 2012)); *see* Fed. R. Civ. P. 23(e)(2). But "the court's

5   intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a

6   lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not

7   the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the

8   settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Hanlon v. Chrysler*

9   *Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998) (citing *Officers for Justice v. Civil Serv. Comm'n,* 688

10  F.2d 615, 628 (9th Cir. 1982)). The review should be undertaken with due regard for the strong legal

11  policy favoring compromise and settlement of class actions. *See In re Syncor ERISA Litig.,* 516 F.3d

12  1095, 1101 (9th Cir. 2008); *Churchill Village, L.L.C. v. General Elec.,* 361 F.3d 566, 576 (9th Cir.

13  2004); *see also In re Optical Disk Drive Prods. Antitrust Litig.,* No. 3:10-md-2143-RS, 2016 U.S.

14  Dist. LEXIS 175515, at *43 (N.D. Cal. Dec. 19, 2016) (internal citation omitted).

15      In deciding whether to give final approval to a class settlement, courts in the Ninth Circuit

16  balance several factors: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity and likely

17  duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the

18  amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings;

19  (6) the experience and views of counsel; (7) the presence of a governmental participant;[2] and (8) the

20  reaction of class members to the proposed settlement. *Churchill,* 361 F.3d at 575-76 (citing *Hanlon,*

21  150 F.3d at 1026); *see, e.g., Mitchinson v. Love's Travel Stops & Country Stores, Inc.,* No. 1:15-cv-

22  01474-DAD-BAM, 2017 WL 2289342, at *4-6 (E.D. Cal. May 25, 2017) (Drozd, J.) (granting final

23  approval based on these factors); *Aguilar v. Wawona Frozen Foods,* No. 1:15-cv-00093-DAD-EPG,

24  2017 WL 2214396, at *2-4 (E.D. Cal. May 19, 2017) (same). Settlements resulting from non-

25  collusive, arm's-length negotiations conducted by capable and experienced counsel are afforded a

26

27

28
_____
[2] Because there is no governmental participant in this case, "this factor…is irrelevant to the court's analysis." *Castillo v. ADT, LLC,* No. 2:15-383 WBS DB, 2017 WL 363108, at *6 (E.D. Cal. Jan. 25, 2017) (Shubb, J.).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

presumption of fairness and reasonableness. *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 U.S. Dist. LEXIS 49477, at *35 (N.D. Cal. Apr. 22, 2010).

The proposed settlement measures well against these standards.

**A.     The Strength of Plaintiff's Case**

"When assessing the strength of plaintiff's case, the court does not reach 'any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of [the] litigation.'" *Aguilar*, 2017 WL 2214936, at *3 (quoting *In re Wash. Pub. Power Supply Sys. Secs. Litig.,* 720 F. Supp. 1379, 1388 (D. Ariz. 1989)). "Instead, the court is to 'evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements.'" *Emmons v. Quest Diagnostics Clinical Labs., Inc.,* No. 1:13-cv-00474-DAD-BAM, 2017 WL 749018, at *4 (E.D.CA. Feb. 27, 2017) (Drozd, J.) (quoting *Wash. Pub. Power,* 720 F. Supp. at 1388)).

At the time of settlement, the case against Odiase appeared strong. Odiase acquired a database of fax numbers from Salesgenie. The Salesgenie program was made available to Odiase by Allstate and provided a database which included fax numbers. Odiase sent fax advertisements to the list, admitted to sending the faxes out, and claimed he had obtained consent from the recipients. At the hearing on the motion for class certification, the court expressed doubts regarding Odiase's claim of consent. After the Class was certified, Odiase's insurance carrier put up its $1 million policy limits.

The case against Allstate was more tenuous. There was a substantial risk that Allstate would prevail against the Class in its Motion for Summary Judgment. (Doc. 119). Allstate argued that it could not be held liable as the "sender" of the faxes under the FCC regulation defining that term, 47 C.F.R. § 64.1200(f)(10), for the following reasons:

(1)     that the faxes were not sent "on behalf of" Allstate, where Odiase failed to obtain Allstate's prior approval for the faxes as required by the Allstate policies he agreed to, and where those policies specifically prohibited agents from sending fax advertisements without the recipients' prior express invitation or permission;

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

(2)      that the faxes do not advertise Allstate's "goods or services," where the faxes do not state that the insurance policies offered are "Allstate" policies, and the only mention of the word "Allstate" on the faxes is in Odiase's email address; and

(3)      that, even if the faxes do advertise Allstate's "goods or services," Allstate could not be held liable as a "sender" solely on that basis, despite the plain language of § 64.1200(f)(10).

The third point presented the greatest risk. The Ninth Circuit has not decided the issue of "sender" liability, but Allstate's strongest case on point was the Seventh Circuit's decision in *Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 825 F.3d 793, 797 (7th Cir. 2016), which held that, despite the plain language of § 64.1200(f)(10), a defendant cannot be liable merely because its "goods or services" are advertised, and the defendant "must have done something to advertise goods or services." Plaintiff's strongest case at summary judgment was the Sixth Circuit's decision in *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 636–37 (6th Cir. 2015), which held the plain language of § 64.1200(f)(10) states that a defendant whose "goods or services are advertised" is liable.

Notably, however, after the Settlement was reached, on May 9, 2018, the Sixth Circuit decided *Health One Med. Ctr., Eastpointe PLLC v. Mohawk, Inc.*, --- F.3d --- , 2018 WL 2123336, at *2 (6th Cir. May 9, 2018), which held that *Imhoff* applies only where "the defendant in fact hired a fax broadcaster to send out the junk faxes," and that § 64.1200(f)(10) does not allow "an innocent party" to "be held liable for having 'sent' the faxes." The *Health One* court held that the defendant drug companies, who did not contract with the fax broadcaster and were unaware of the fax transmissions, were not liable and were not "senders" under the TCPA, even though the faxes advertised their products. *Id.* If Plaintiff had not reached the Settlement on April 20, 2018, its strongest case for "sender" liability, *Imhoff*, would have been undermined.

In addition, the Seventh Circuit on August 4, 2018 held that a defendant could not be held strictly liable under the TCPA on the basis that its goods or services were advertised in fax when it did not have any connection to the faxing, did not know about the faxing, and it was against the defendant's

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

company policy. *See Helping Hand Caregivers, Ltd. v. Darden Restaurants, Inc.,* 900 F.3d 884 (7th Cir., Aug. 14, 2018)

Furthermore, there was an additional risk that the Court would accept Allstate's argument that Ninth Circuit TCPA cases would have required Plaintiff to "prove there is an agency relationship" between Allstate and Odiase with respect to the fax advertising at issue. (Doc. 119, Allstate Mot. Summ. J. at 13 (quoting *Meyer v. Capital All. Grp.*, No. 15-CV-2405-WVG, 2017 WL 5138316, at *10 (S.D. Cal. Nov. 6, 2017)). The Class faced significant risk that it would be unable to prove that Allstate is "vicariously liable" for the faxes under traditional agency-law standards.

Plaintiff believes this is the first class settlement where the Defendant did not order and did not know the fax advertisement was being sent.  The Allstate Defendants are paying in excess of $5.5 million to settle the actions of an independent contractor in violation of written company guidelines. In the present context, however, the Court need not reach any ultimate conclusions because the evidence has not been fully presented. *Mitchinson*, 2017 WL 2289342, at *4. The seriousness of the issues presented, and the fact that they were heavily contested, weighs in favor of approval. *See Mitchinson*, 2017 WL 2289342, at *4; *Aguilar*, 2017 WL 2214936, at *3.

The settlement amount ($375 per fax) represents 75% of what the class would have recovered at trial if they had a victory on the merits.  *See, e.g., Bayat v. Bank of the West,* No. C-13-2376-EMC, 2015 U.S. Dist. LEXIS 50416, at *10 (N.D. Cal. Apr. 15, 2015) ("Because the strength of Plaintiffs' claims is in doubt, the first *Churchill Village* factor tips in favor of final approval of the settlement.").

**B.      The Risk, Expense, Complexity and Likely Duration of Further Litigation**

Continued litigation would have exposed the Class to considerable risks of non-recovery and, at best, delayed any recovery for years. To be blunt, Odiase is judgment proof. The only available recovery would be from his errors and omissions carrier. The Allstate Defendants have the financial ability to litigate this case indefinitely and appeal any unfavorable result.

Absent this settlement, litigation would have continued for years. Defendants mounted a tenacious defense through two highly-skilled and experienced legal teams. Any liability judgment would almost certainly be appealed. Defendants would have challenged the class certification order and any jury verdict on both merits and due process grounds. And a bankruptcy filing by Odiase at any time in this process would have delayed recovery even longer. "All these proceedings could take years to fully resolve." *Emmons,* 2017 WL 749018, at *5. Furthermore, a party's continued denial of liability necessarily causes Plaintiffs "to face serious hurdles, including a motion for summary judgment, *Daubert* challenges, and inevitable appeals that would likely prolong the litigation, and any recovery by class members, for years." *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1131 (2015).

## C.    The Risk of Maintaining Class Status

Plaintiff believes the case for certification is strong and that the court's certification order would not be overturned because the material facts concerning the fax-blast program or the asserted defenses did not vary by Class member, and thus a strong case can be made that the predominance element of Rule 23(b)(3) was satisfied. Nevertheless, there was an inherent, irreducible risk that class certification could not be maintained throughout the case. Rule 23 requires the moving party to independently satisfy all four requirements of subsection (a), and at least one alternative standard under subsection (b). *See Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996). "[T]here are no invariable rules regarding the suitability of a particular case filed under this subsection of the TCPA [prohibiting unsolicited facsimile advertisements] for class treatment; the unique facts of each case generally will determine whether certification is proper." *Gene and Gene, LLC v. BioPay, LLC,* 541 F.3d 318, 328 (5th Cir. 2008).

The strong majority of courts, particularly recently, have certified contested TCPA/junk fax classes. *See, e.g., Ira Holtzman, CPA, & Assocs., Ltd. v. Turza,* 728 F.3d 682, 684 (7th Cir. 2013) ("class certification is normal in litigation under §227"), *cert. denied*, 134 S. Ct. 1310 (2014). In this case, however, Odiase contended that he had obtained permission from the fax recipients. Numerous courts have denied class certification of junk fax classes when the advertiser offers credible evidence that the permission issue would require a large number of individual inquiries. The Sixth Circuit held

that when the advertiser produces concrete evidence of "consent, evinced by hundreds of thousands of customer documents," the question whether the faxes were unsolicited "is sufficiently individualized to preclude class certification." *Sandusky Wellness Ctr. v. ASD Specialty Healthcare, Inc.,* No. 16-3741, __F.3d___, 2017 WL 2953039, at *6 (6th Cir. July 11, 2017).[3] Although Plaintiff believes this argument would have been unavailing on the facts of this case, affirming class certification on appeal was certainly not "guaranteed," and "this favor weighs in favor of approving the settlement." *Castillo*, 2017 WL 363108, at *5. This risk of losing class status in the absence of settlement weighs in favor of approval. *In re LinkedIn User Privacy Litig.*, 309 F.R.D. at 587 (2015).

### D.      The Amount Offered in Settlement

This factor weighs strongly in favor of approval. The $6.5 million recovery is exemplary, particularly in comparison with the numerous litigation and collection risks discussed above. The gross settlement is $375 per fax (75% of what a successful jury trial could achieve), per Class member. As discussed earlier, the net settlement amount to be distributed to the Class would be about $4,425,188.00, with the average Class member receiving $254. (Decl. ¶¶ 12-13.) This is well-within the Ninth Circuit's appropriate range of relief. *See, e.g., Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. at 256 (approving settlement that represented between 11% and 27% of the total potential recovery); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. at 588 (approving settlement that represented at least 30% of what class members could receive at trial). This settlement appears to be the largest junk fax settlement in the Northern District of California to date.

The settlement also stands apart for its fair and equitable class distribution. Unlike the vast majority of TCPA and consumer class settlements, proceeds will be distributed to all known Class

---

[3] Plaintiff also charged Defendants with violating FCC regulations that required opt-out disclosures on all faxes, solicited or unsolicited. (Doc. No. 1, ¶ 30.) Several courts have held that common issues predominated, and certified junk fax classes, when the faxes failed to include an opt-out notice required by the statute and FCC regulations. *See, e.g., Vandervort v. Balboa Capital Corp.,* 287 F.R.D. 554, 561 (C.D. Cal. 2012). In 2014, however, the FCC "waived" Defendant's compliance with its regulation requiring opt-out disclosures on solicited faxes. *See* In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket Nos. 02-278, 05-338, FCC 14-164, Order, ¶ 27 n.99 (Oct. 30, 2014). And earlier this year, the District of Columbia Circuit held that "the FCC's 2006 Solicited Fax Rule is unlawful to the extent that it requires opt-out notices on solicited faxes," and vacated the FCC's order that had promulgated the rule. *Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078, 1083 (D.C. Cir. 2017). Taken together, these developments weakened the argument for predominance based on defective opt-out notices.

members without requiring them to submit claims. An automatic distribution is much more likely to result in meaningful compensation to the class than a reversionary, claims-made settlement. *See* Brian T. Fitzpatrick & Robert C. Gilbert, An Empirical Look at Compensation in Consumer Class Actions, 11 N.Y.U. J.L. & Bus. 767, 770 (2015); *see also In re:Checking Account Overdraft Litig.,* No. 1:09-MD-02036-JLK, 2013 WL 11319244, at *10 (S.D. Fla. Aug. 2, 2013). The settlement fairly apportions net proceeds among the Class according to the number of faxes successfully sent to each member. In other words, Class members will be paid according to the number of faxes they received, rather than by an arbitrary "pro rata" or other formula.[4] And under no circumstances will any settlement funds revert to Defendants.

### E.     The Extent of Discovery Completed and the Stage of the Proceedings

The stage of the proceedings at which settlement was reached also strongly favors final approval. This "settlement is the product of non-collusive negotiations after substantial discovery had been conducted, giving plaintiff and plaintiff's counsel a good grasp of the merits of the case before settlement talks began." *Taylor*, 2016 WL 6038949, at *4. Plaintiff's counsel engaged in a year's worth of discovery, serving several sets of interrogatories, requests for admission, Rule 34 requests for production of documents, and answering 10 sets of written discovery. This resulted in production of approximately 4,344 documents and reviewing 15,395 recorded telephone calls and analyzing 8 electronic databases. To obtain much of this discovery, Plaintiff had to convene several formal and informal discovery conferences. The parties took 16 depositions, including Plaintiff's forensic computer expert. Even after the discovery, the proposed settlement was achieved only after two mediations with Magistrate Judge Corley, and detailed negotiations over the final settlement agreement.

---

[4] Several other approved TCPA settlements, by contrast, have imposed arbitrary ceilings on claimants' recoveries, *regardless* of how many violations impacted them. *See, e.g., Vandervort v. Balboa Capital Corp.,* SACV 11-1578-JLS (JPRx), Doc. No. 120-1 (C.D. Cal. Jan. 20, 2014); *Palmer v. Sprint,* 09-cv-01211, Dkt. 61-8 (W.D. Wash. April 26, 2011) (recovery capped at $2,000); *Pimental v. Google, Inc.,* 4:11-cv-02585, Dkt. 84-1 (N.D. Cal. Oct. 5, 2012) (recovery capped at $500); *Arthur v. Sallie Mae, Inc.,* 2:10-cv-00198, Dkt. 184-1 (W.D. Wash. Oct. 11, 2011) ($500 cap); *Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.,* No. 1:09-cv-00776 (Dkt. 98-2) (N.D. Ill. Jan. 7, 2011) (recovery capped at $375 regardless of number of faxes received); *Satterfield v. Simon & Schuster, Inc.,* 4:06-cv-02893, Dkt. 112-1 (N.D. Cal. February 17, 2010) ($175 cap).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

1  This settlement was secured only after intense litigation with highly-skilled and tenacious

2  adversaries. It does not come close to overreaching or collusion among the parties. *See Aguilar,* 2017

3  WL 2214936, at *4 (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1985)).

4  All settlement negotiations and a written term sheet was executed in the presence of Judge Corley.

5  Where a proposed settlement is the product of arm's-length negotiations conducted by

6  capable and experienced counsel, the Court begins its analysis with a presumption that the settlement

7  is fair and reasonable. *See In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. at 450; *G.F. v.*

8  *Contra Costa Cnty.*, 2015 U.S. Dist. LEXIS 100512, at *43 (N.D. Cal. July 30, 2015) ("the assistance

9  of an experienced mediator in the settlement process confirms that the settlement is non-collusive").

10  ### F.    Experienced Class Counsel Favor Approval

11
12  Class counsel are veteran litigation attorneys with extensive experience representing clients in

13  complex litigation. Among other things, they have considerable experience prosecuting class actions,

14  and TCPA class actions in particular. After reviewing the briefs and taking oral argument on the

15  contested class certification motion, the Court found Class counsel well qualified to represent this

16  class and appointed them to represent the Class. Class counsel uniformly believe the settlement is

17  fair, reasonable, and adequate, and strongly recommend its approval. The named plaintiff/class

18  representative, who has actively participated in the case, agrees.

19  ### G.    The Highly Favorable Class Reaction to the Proposed Settlement

20  This factor weighs heavily in support of the proposed settlement. As discussed earlier, the

21  settlement administrator successfully delivered notice to 96% of the 15,276-member class. The notice

22  gave Class members meaningful information about the litigation and settlement. It informed members

23  they could object, or remain in the class and receive payment. The notice also informed members they

24  could obtain additional information by visiting the settlement website, by contacting settlement

25  administrator or Class counsel at a toll-free number, and by accessing the Court file on PACER.[5]

26
27
28  ---
[5] The settlement website, www.odiase-allstatetcpasettlement.com, offers extensive information to interested class members. (Merryman Decl.)

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL**

The Class's reaction was extremely positive. To date, no Class members have objected to the settlement, and none have expressed dissatisfaction with the settlement.

The Class's overwhelming backing is powerful support in favor of the settlement. "The absence of objections to a proposed class action settlement supports that the settlement is fair, reasonable, and adequate." *Taylor*, 2016 WL 6038949, at *5 (citing *National Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 529 (C.D. Cal. 2004)).

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval to the settlement.


DATED: October 4, 2018                    JOHN C. ETTER, individually and on behalf of a
                                          class of similarly situated persons

                                          By: s/ Ryan M. Kelly

                                          BRIAN J. WANCA *(pro hac admitted)*
                                          RYAN M. KELLY *(pro hac admitted)*
                                          ANDERSON + WANCA
                                          3701 Algonquin Road, Suite 500
                                          Rolling Meadows, IL 60008
                                          Telephone: (847) 368-1500
                                          Facsimile:  (847) 368-1501
                                          bwanca@andersonwanca.com
                                          rmkelly@andersonwanca.com
                                          *Lead Class Counsel*

                                          ROBERT C. SCHUBERT
                                          WILLEM F. JONCKHEER
                                          SCHUBERT JONCKHEER & KOLBE LLP
                                          Three Embarcadero Center, Suite 1650
                                          San Francisco, CA 94111
                                          Telephone: (415) 788-4220
                                          Facsimile:  (415) 788-0161
                                          rschubert@schubertlawfirm.com
                                          wjonckheer@schubertlawfirm.com
                                          *Class Counsel*